Case 29—INDICTMENT—November 22.

## Commonwealth v. Fowler.

APPEAL FROM JEFFERSON CIRCUIT COURT, CRIMINAL DIVISION.

1. A STATUTE REQUIRING DRUGGISTS TO PROCURE A LICENSE, and pay a tax of $50 thereon, to retail spirituous and vinous liquors, even upon the prescription of a physician, is a valid exercise of police power, and therefore not in violation of the Constitution. But such a statute could not be upheld as a revenue statute, as the Legislature has no

Commonwealth v. Fowler.

power under any constitutional provision on the subject of taxation to tax the occupation of the druggist, and then single out and tax the sale of a particular commodity which properly constitutes a part of that business.

2. PROHIBITION OF SALE OF LIQUOR AS MEDICINE.—While the Legislature has no power to prohibit the sale of liquor as a medicine, it is within its power to prescribe as a condition of such sale that it shall be made upon the prescription of a regular practicing physician.

WM. J. HENDRICK, ATTORNEY-GENERAL, FOR APPELLANT.

1. Section 181 of the Constitution authorizing the Legislature to provide for the payment of license fees on franchises, trades, professions, &c., was not meant to limit the taxing power of the Legislature, but it is permitted to adopt these forms of taxation in addition to the powers conferred by the other sections of the Constitution. (Present Constitution secs. 169 to 182.)

2. In the exercise of her police power the State is the "sovereign mistress," and may impose licenses upon "the various trades, occupations and professions," provided there is no discrimination in favor of one class against another. (Warren Boroughs v. Geer, 117 Pa. St., 207; Quartlebaum v. State, 79, Ala., 1; Kneeland v. Pittsburg, 11 Atlantic Rep., 657; Ex parte Thornton, 12 Fed. Rep., 538; Walters v. Duke, 31 La. An., 668; St. Louis v. Green, 6 Mo. App., 590.; Bullitt v. Paducah, 8 Ky. Law Rep., 870.)

KNOTT & EDELEN FOR APPELLEE.

1. A druggist having complied with the legislative requirements as to examination and registration, he has an indefeasible right to carry on the practice of his profession, this practice to include the right to sell such remedies as the condition of the patient requires, without the prescription of a physician. (State Board of Pharmacy v. White, 84 Ky., 626.)

2. The sale of whisky in good faith for medical purposes only, being for the public good and not against the public peace, health or morals, can not be prohibited by the State.—Not having that power, it has not the power to impose conditions which, in effect, might amount to a prohibition. (Slack Case, 13 B. M., 1; Sarrls v. Commonwealth, 83 Ky., 332; License Tax Cases, 5 Wallace, 462.)

3. The right to impose a restrictive license tax upon the whisky sold by a druggist for medical purposes only, would carry the right to impose the same upon every article sold by him.

4. The fact that the druggist is subject to the same conditions as to notice, application and the possibility of refusal at the hands of the county court as the applicant for bar-room license, and the further fact that the means adopted for its enforcement are not appropriate to the col-

lection of taxes, show conclusively that the tax upon druggists is not a revenue tax as authorized by section 181 of the Constitution. (State v. Frame, 39 Ohio St. Rep., 399; State v. Sinks, 42 Id., 345.)

5. The exercise of the police power of the State does not extend beyond regulating that which is against the public peace, the public health or the public morals.

6. It being admitted that the sale was for medical purposes alone, the question of whether the State might impose a restrictive license for the sale of whisky as a beverage does not arise.

JUDGE HAZELRIGG DELIVERED THE OPINION OF THE COURT.

The appellee Fowler was indicted for selling whisky without license, and found not guilty by the court upon the following agreed statement of facts : The defendant, a legally registered pharmacist, regularly engaged in business as a retail and prescription druggist in good faith in Louisville, Kentucky, sold as a medicine at his drug store one pint of whisky to R. H. Thompson at the time and in the manner charged in the indictment; that the whisky was bought in good faith to be used as a medicine; that the defendant had not procured any license to sell liquors in any quantity, except as required by the statutes of the United States to sell such liquors by retail; that the whisky so sold had not been prescribed as a medicine by any regular practicing physician, and that spirituous liquors, including whisky and the various kinds of wines, are useful and necessary medicines in the treatment of disease, and prescribed and recommended as such by all standard authorities on pharmacology and the Materia Medica, and kept, sold and dispensed by druggists everywhere as officinal medicines.

The provisions of the law alleged to have been violated are as follows:

"Before engaging in any occupation or selling any article named in this and section 4225 (relating to peddlers), the person desiring to do so shall procure license, and pay the tax thereon as follows:  *   *   *.

"To persons who are druggists in good faith, to retail spirituous and vinous liquors at the drug store in quantities not less than a quart, the liquor not to be drunk on the premises, or adjacent thereto, and to sell in quantities less than a quart, for medicinal purposes only, on the prescription of a regular practicing physician, fifty dollars." (Ky. Stat., sec. 4224.)

So much of the Constitution as is supposed to affect the question consists of a portion of section 181, and reads as follows:

"The General Assembly may, by general laws only, provide for the payment of license fees on franchises, stock for breeding purposes, the various trades, occupations and professions, or a special or excise tax."

The learned judge below, in determining the question, said: "It is evident that, under the constitutional provision aforesaid, the Legislature would have the power to provide a license fee upon druggists as a profession, or a special tax upon them as a class, or an excise tax upon their sales of commodity, but if we follow the interpretation given to a certain provision of the old Constitution, then it is clear that the Legislature would not have the power to select one special commodity sold by a druggist and legislate in regard thereto by imposing conditions upon a sale of that commodity when made by a druggist different from what is imposed upon any one else who sells the same commodity. In other words, sec-

tion 181 defines and limits the power of the General Assembly, and by mentioning what powers it may exercise in regard to license fees, special and excise tax, it inhibits and excludes the exercise of all other powers.''

And the conclusion was reached that, as the General Assembly, in the statute in question, had not followed either of the methods prescribed in section 181 of the Constitution—in other words, had not taxed the occupation of the druggists, or imposed on them a special or excise tax, the statute was, therefore, unconstitutional.

It must be admitted that if this statute is to be regarded as a revenue statute, and as an effort to single out, for the purposes of taxation proper, any particular commodity in the line of articles which the druggist may handle as such in the prosecution of his calling, or encumber with a specific tax any part or parcel, so to speak, of the druggist's trade, properly embraced in the conduct of his business as a whole, then the learned judge is right in saying that this court has condemned such a process of taxation. The Legislature, after taxing the whole, can not again tax the parts. It could not tax the occupation of the pharmacist and then tax him for filling each prescription, any more than it could tax the profession of the lawyer and then tax him for each case he might engage in. This would be such an arbitrary method of taxation as to be in violation of the Bill of Rights. So, with respect to the legal principle, *expressio unius exclusio alterius*, the Constitution having designated the subjects of taxation and the methods to be adopted

in the imposition and collection of the taxes, no consti-
tutional authority for the exercise, of the power of
taxation can be found outside of that instrument.
The former Constitution, it will be remembered, made
no provision as to taxation *eo nomine*, but as the power
to tax is inherent to sovereignty, no difficulty was ex-
perienced on that account.    The present instrument
has provided in sections preceding section 181, a sys-
tem for the imposition and collection of an ad valorem
tax only, and in that section, under the guise of license
fees, it provides for a tax on franchises, &c.    But to
no constitutional provision on the subject of taxation
does the act imposing this alleged tax on druggists
for selling a particular commodity conform.    And if
regarded, therefore, as a revenue statute, it must
be held inoperative and invalid.    We are convinced,
however, that the act under consideration was not
intended as a revenue measure, and its passage was
in no sense in virtue of the constitutional power of
levying taxes.    It is simply the exercise of the or-
dinary police power of the government.    This power
is not defined in the Constitution or its extent in
terms limited.    It could not well be the subject of
inflexible legal definition or restriction.    Certainly
is the extent of its exercise left unaffected by those
sections of the Constitution providing ways and means
for the subsistence of the State by process of taxation.
It is not above or beyond the Constitution, however,
and the question is, in what respect, if any, does the
act under consideration violate any right guaranteed
to the druggist under the Constitution?

Every one has the right to follow an innocent call-

ing without permission from the government. He may do with his own whatsoever he pleases, so that he injure no one else. We agree with learned counsel that "the doctrine of legislative permission, as a condition precedent to the conduct of any useful or harmless business, is grossly repugnant to those obvious principles of human right which lie at the foundation of just government among men." So, then, without governmental interference or consent, we say the farmer may till his soil, the merchant may buy and sell, the lawyer and the doctor practice their professions, and the druggist and pharmacist compound their medicines. And if by reason of shysters and quacks an injured people demand protection, or if because ill-behaved druggists or pretended pharmacists debauch the public morals by dealing out intoxicating liquors and nostrums as beverages, yet the pursuit of these callings can not be prohibited. The innocent and honest druggist can not be restrained of his liberty by reason of the dishonest practices of others. His pursuit being in itself harmless, and indeed useful, and capable of being conducted without harm to the public, can not be prohibited, and this is true of every legitimate act going to make up and constitute his trade or profession. It is as true of his right to fill a prescription for whisky as a medicine, as it is of his right to fill one calling for calomel. As said by this court in Sarrls v. Commonwealth, 83 Ky., 332:

"The power of the Legislature to prohibit the prescription and sale of liquors to be used as a medicine does not exist, and its exercise would be

Commonwealth v. Fowler.

as purely arbitrary as the prohibition of their sale
and use for religious purposes." But to prevent or
lessen the abuses which experience has demonstrated
will likely follow the traffic in whisky in any form,
the State may place watchers over it, may erect all
sorts of police regulations, may require licenses and
establish strict official inspection and police surveil-
lance. The efficiency of the license system, as fairly
attaining the supervision aimed at, is attested by
common experience.

The officers of the law, by a mere inspection of the
records, may at once know where the business is fol-
lowed as to which their supervision and oversight are
needed. We are concerned, however, not with the
wisdom of the plan, but rather with the exercise of
the power. The power to enact the present statute
with respect to druggists, so far as requiring them to
obtain a license and pay therefor the sum indicated,
before they may sell spirituous and vinous liquors by
the quart, and, therefore, as a beverage, will probably
not be denied. At least there is no discussion of this
phase of the question in the exhaustive brief of coun-
sel, or was there in oral argument. The contention
is that, as the sale of whisky as a medicine is harm-
less, and indeed often useful and necessary, it is not
within the legislative competency to prohibit it; that
to do so is in violation of natural right. We may
readily concede these premises, but it does not follow
that the law in question violates any natural right.
It does not prohibit the sale as a medicine except on
the condition that it be made on the prescription of
a regular practicing physician—a condition we think

entirely reasonable, and clearly within the power of the Legislature to impose. May the patient who wants the whisky diagnose his case, or may the tradesman who has the goods to sell prescribe the medicine? Certainly in such event the effort to restrain at all the use of intoxicants would be rendered entirely futile. It has long been the settled policy of this State, and indeed of every State in the Union, to confine the sale of intoxicants, when made in small quantities, to druggists and physicians, to be used as a medicine. (Commonwealth v. Reynolds, 89 Ky., 150.) It is in the line of the physician's profession to prescribe medicines, not in that of the druggist or pharmacist. It is no interference with the business of the latter that the right to so prescribe is confined to the physician.

It is true the agreement in the case at hand recites that spirituous liquors, including whisky, are kept, sold and dispensed by druggists in good faith everywhere as officinal medicines; but if a druggist may sell off his stock in trade, of which whisky is a part, merely because his customer calls for it as an officinal medicine, why may not the grocer sell his whisky and wines for culinary purposes? It is certainly as harmless, if not as benevolent, to furnish the necessary ingredient of a palatable mince pie, as to administer to the wants of the indisposed. Counsel may say, however, that while the power to prohibit is not in terms conceded to the Legislature under the principal announced, yet if the obtainment of the license and payment of the required fee therefor, are made conditions precedent to the sale of whisky for the purposes named, it is in effect the power to destroy or prohibit.

The answer is, however, that it does not in fact pro-hibit, save on legitimate and reasonable conditions. It restrains only, and that is precisely the end aimed at by such legislation. The imposition of a license fee in this case does not differ from all license laws which confer special privileges on fit and competent per-sons making applications therefor.

Druggists and physicians are deemed suitable per-sons to intrust with this power, harmless in itself and useful to mankind, but dangerous when exercised without restraint and proper supervision. So may an engineer be prohibited from running an engine save upon the condition that he obtain a license after examination. An attorney may not practice his pro-fession until his knowledge touching the law may be known of all men through the certifications of his license; likewise a physician must exhibit his diploma as the evidence of his fitness to follow his profession. Has it ever been argued that this requirement, one, too, in the nature of a condition precedent to the pursuit of the calling, is an abridgement of the natural right of the engineer or lawyer or doctor to follow the calling of his choice? But by the law in question no man is prohibited from following the occupation of a druggist or selling whisky as a medi-cine as the law requires. His personal liberty is in no true sense restrained by the demands of the statute. Whether under the guise of a license tax, but which is laid in the exercise of the power of taxation and for revenue purposes, the right of these necessary factors in society to continue their respective callings can be made to depend on the payment of the levy, is a ques-tion not necessary to decide.

Should such a license fee—we mean one exacted as a means of police regulation—be imposed as would be so outrageously unreasonable as to amount to prohibition, and go beyond the probable cost of regulation, the courts could interpose on the principles announced. The conduct of an innocent and useful business is not made criminal by the statute imposing a fine on the druggist for violating the law requiring a license for making sales of spirituous liquors. It is this feature of his business which brings him within the oversight and under the control of the police power of the State, and which power may be thus exercised as a means of preventing or reducing to a minimum the threatened harm to public morals.

Much has been written, and this feature is urged with warmth by distinguished counsel, on the hardships liable to be inflicted in particular instances by reason of the requirement of a prescription.

A man is stricken down in the street by a falling timber, and whisky will relieve him; a woman is seized with convulsions, and brandy will save her; a child is bitten by the deadly copperhead, and alcohol in some form is a specific. These harrowing incidents, if they prove anything, would require that intoxicants should be free for all, and kept in convenient places for such emergencies.

We might answer that these individual hardships are indeed rare, and that the greatest good to greatest number is the controlling principle of the law. But the old illustration given by Mr. Blackstone, affords the better answer. An old law provided

Commonwealth v. Fowler.

"that whosoever drew blood in the street should be punished with the utmost severity." A person fell in a fit, and a surgeon opened a vein and drew blood in the street. Here was a clear violation of the letter of the law, and yet from that day to this it has never been considered as a violation of the spirit of the law.

. The statutes of the various States on the subject under discussion are not similar, and it is, therefore, difficult to find cases directly in point. Very few, if any, however, are repugnant to the views we have expressed, and the great bulk of them fortify our position. In Wright v. The People, 101 Ill., 126, it was held, under a statute somewhat similar to ours, that "the sale of intoxicating liquors in less quantity than one gallon by a regular druggist, even if it be in good faith for medical purposes, without a license to do so from the proper municipal authorities, is prohibited by the statute; and any druggist * * who shall so sell the same without license is liable to indictment, though the liquor is bought and sold, and in fact used solely for medicinal purposes." The words of the statute, "whoever, not having a license, &c., shall sell," were unqualified, and without any exception or limitation whatever as to any class of persons or cases. The same argument made here as to the violation of natural right and the probable hardships was made in that case. The court said: "But let it be once understood that the druggist or other tradesman, merely because his chief business is confined to traffic in other classes of merchandise, may retail intoxicating liquors *ad libitum*, so long as he

in good faith sell for some legitimate purpose other than as a mere beverage, the chief safeguards which the law, as now understood, throws around the subject, will soon be frittered away, and the doors thrown wide open to all manner of frauds and evasions of the law, which would bid defiance to the highest degree of watchfulness and diligence the officers of the law could possibly bring to bear to the official discharge of their duties in endeavoring to enforce the law on the subject." To the same effect is the case of Noecker v. The People, 91 Ill., 494.

In the Intoxicating Liquor Cases, 25 Kan., 751 (Brewer, Judge), the syllabus is: "A statute prohibited the sale of intoxicating liquors, save by licensed druggists, for certain excepted purposes. *Held*—Constitutional." *In re* Ruth, 32 Iowa, 253, the court says: "It has been found that the health and lives of the people demand that a few licensed persons be empowered to sell these liquors for lawful purposes, and that all others be forbidden to deal in them. Of those who are authorized, the law requires satisfactory proof of good moral character. In this respect it differs not from all license laws which bestow privileges upon fit and proper persons making application therefor. These laws have always been sustained."

In Woods v. State, 36 Ark., 36, the statute considered provided that it should be unlawful for any person to sell intoxicating liquors "in any quantity or for any purpose whatever, without first procuring a license from the county court of the county in which such sale is to be made, authorizing such person to exercise such privilege," &c.

Commonwealth v. Fowler.

It was agreed that the defendant Woods "was a druggist, and sold, as a medicine, upon the prescription of a practicing physician, to one T. C. Miller, a half-pint of whisky; that the same was bought for and used as a medicine; that whisky is often prescribed by physicians and used with beneficial effect in the treatment of disease; and that the defendant did not have a license from the county court to sell liquors."

The court held that the defendant, though a druggist, could not lawfully sell such spirits even as a medicine upon the prescription of a physician. Mr. Tiedeman, in his work on Limitations of Police Power (section 102), lays it down in substance, that when the occupation or business is not inherently harmful, or, in other words, where it is possible to conduct it without harm to the public, its prosecution can not rightfully be prohibited; but licenses may be required and the most rigid system of police inspection be established.

We need hardly add, in conclusion, that we can not hold this or any law invalid for the reason simply that it violates our notions of justice, or is oppressive, or, in the opinion of many, is not required or authorized by public necessity. The remedy for unwise or unjust legislation is not to be provided by the judiciary.

In the language of Chief Justice Robertson, in the case of the City of Louisville' v. Hyatt, 2 B. M., 177, "it seems to us that we should be justly chargeable with wandering from the appropriate sphere of the judiciary department were we, by a subtle elabora-

tion of abstract principles and metaphysical doubts and difficulties, to endeavor to show that such power may be questionable, and on such unstable and unjudicial ground to defy and overrule the public will as clearly announced by the legislative organ."

The agreed facts in this case are sufficient to sustain a conviction, and the judgment is *reversed* for proceedings consistent with this opinion