## Lewis, Clerk Fayette County Court v. James, Inspector, et al.

## Nash, Clerk Franklin County Court v. The State Tax Commission, et al.

(Decided June 14, 1921.)

Upon a motion before a judge of the Court of Appeals to dissolve a temporary injunction granted by the circuit court.

1.  Officers—Compensation and Fees—Collection of License Taxes.—The county court clerk is not authorized to retain five per centum of the license taxes imposed by chapter 90, Session Acts, 1920, for collecting and remitting same, and sections 4195 and 4242, Ky. Stats., do not have any application to the collection of license taxes provided for by chapter 90, supra.
2.  Officers—Additional Duties—Compensation and Fees.—Additional duties my be added to an office during the term of an incumbent, and he will be required to perform the duties, although no compensation may be provided.

GEO. C. WEBB, MORRIS & JONES and LOGAN & MYATT for plaintiffs.

CHAS. I. DAWSON, Attorney General, for defendants.

OPINION OF THE COURT BY CHIEF JUSTICE HURT—Dissolving temporary injunction.

The General Assembly, at its regular 1920 session, enacted a statute which is chapter 90 of the Acts of that body. It is entitled: "An Act relating to vehicles: regulating their use and operation upon the public highways of this Commonwealth; providing for the registration and licensing of motor vehicles; fixing the amount of the license and manner of payment thereof; providing for the registration and licensing of operators of motor vehicles and the amount of such license; providing a method of registration of motor vehicles; preventing illegal traffic in motor vehicles; providing penalty for the violation of this act, and repealing any and all conflicting laws." By the provisions of the act, a license tax was imposed upon the owners of motor vehicles, for the privilege of operating same or permitting the operation of same upon any public highway as defined in subsection (f) of section 1 of the act, as well as a license tax upon the privilege of operating a motor vehicle as a chauffeur, upon a public highway, as defined in the act. For the regulation and control of the operations of motor vehicles the owners and chauffeurs were required to register with the Tax Commission through the medium of the clerks of the county court, upon whom the act imposed a great many duties with regard to such registration, furnishing application blanks therefor, receiving applications, issuing receipts provided for in the act, collection of license taxes, distributing plates and badges, keeping records, and probably other duties. In the act, the duties of the clerks are stated as follows in section 17 thereof:

"Section 17. Duties of the clerk. (a) It shall be the duty of the clerk in each county to see that the provisions of this act in his county are enforced, and in doing so he shall: (b) Take all applications as provided in this act. (c) Issue the receipts provided for in this act on blanks furnished by the Commission. (d) Collect the fees due the state as provided for in this act. (e) Distribute the registration plates and badges furnished by the Commission and keep a complete record in his office for the benefit of the public of all such registrations in his county, and to notify the owner or chauffeur of the receipt by him of the duplicate badges or plates. (f) Remit and report each Monday to the Commission all moneys collected under him during the previous week, together with the duplicates of receipts issued by him during the same period, all checks to be made payable to the state treas-

urer. (g) Account to the Commission for all registration plates, badges and receipt forms consigned to him at such time or times as the Commission may direct; give the Commission timely notice of a probable deficiency of plates or other supplies.''

As compensation to the clerk for the services required of him by the provisions of the act, it is provided that he may collect from the licensees the following fees for the following specific services:

(1) For filing an application for registration, receiving license fee, and giving to the applicant a receipt containing the registration number and the information included in the application, and two plates bearing the number, the sum of thirty cents.

(2) For delivering to one who has lost a registration receipt, upon application filed, the sum of forty cents.

(3) For receiving from a licensee a statement as to his loss of a registration plate or plates, receiving fifty cents for each plate or plates desired to be duplicated and giving receipt therefor, the sum of forty cents.

(4) Notifying, by mail, the licensee of the receipt of the duplicate plate or plates, taking up the receipt above mentioned and delivering to the licensee the duplicate plate or plates, the sum of forty cents.

(5) When a vehicle is sold, receiving the endorsed receipt of the original owner and the bill of sale, and retaining same, receiving the transfer fee of one dollar, and issuing a receipt bearing the same data and information as is required in the original receipt, except the change in name and address, the sum of forty cents.

(6) For receiving registration plates, and endorsed receipts from a licensee, who has ''junked'' a vehicle, and forwarding these, with a copy of bill of sale, to the state Tax Commission, the sum of forty cents.

(7) For receiving application for a chauffeur's license, receiving license fee, delivering a receipt containing the name and address, registration number and description of the applicant, and a numbered metal badge to the applicant, the sum of forty cents.

(8) For duplicating receipt and badge of a chauffeur, who has lost the original, the sum of forty cents.

Section 18 of the act, among other provisions, contains the following:

"Section 18. Duties of the commission. (a) It shall be the duty of the commission to carry out the provisions of this act, and in so doing shall:

(i) Disposition of funds. Receive all moneys forwarded by the clerk in each county, and turn over same to auditor for the benefit of the state road funds; and out of this fund shall be paid the expenses of said commission, incident to the enforcement of this act, said payment being made in the manner provided by law for payment of salaries and expenses.

(j) Settlements. Shall at the end of each fiscal year make a settlement of the accounts showing the receipts and expenditures, and file same with the auditor of public accounts for the state. And they shall further require an accounting from the clerk in each county for all moneys received by him under the provisions of this act, after deduction of his fees under this act, and for all receipt forms, plates and badges consigned to him."

Section 22 of the act provides as follows:

"Any and all laws and parts of laws in conflict herewith are hereby repealed."

Each of the plaintiffs, who is a clerk of a county court, one for the county of Fayette, and the other for the county of Franklin, instituted an action against the State Tax Commission, and the individual members thereof, and the former included as defendants to his action, the inspector and examiner and the treasurer, but each of the actions involves the same question for decision, and were heard together in the trial court. A demurrer was sustained to the petition of the clerk of the Fayette county court, so far as it concerned the inspector and examiner and the treasurer. The plaintiffs claim that they are entitled to retain 5 per centum of the moneys collected by them and paid over to the treasurer of the state, through the Tax Commission, from the license taxes imposed upon the owners of motor vehicles and chauffeurs, as compensation for their services in receiving and remitting such taxes. Averring that the defendants were demanding that they pay over to the state the entire sum of such taxes and threatening to inflict penalties upon them for failing to do so, the plaintiffs ask an injunction against the defendants, to restrain them from taking such action. The circuit court being of the opinion that section 4195, Ky. Stats., applied to the collection and remission of the taxes in controversy, and that the plaintiffs were entitled

to retain the 5 per centum of the sum of all license taxes collected and paid over by them under chapter 90, Session Acts, 1920, a temporary injunction restraining the members of the Tax Commission from requiring the plaintiffs to account for or to pay over the 5 per centum, and the question is now before me, as a judge of the Court of Appeals, upon the motion of the Tax Commission and Attorney General, to dissolve the injunction.

The following facts are conceded: (1) Chap. 90, Session Acts, 1920, was enacted after the plaintiffs had been elected and inducted into their respective offices, and (2) the duties imposed upon them by that act were duties which they had not theretofore been required to perform, either with or without compensation. Both plaintiffs and defendants invoke sections 161 and 235 of the Constitution, the former of which provides that, "The compensation of any city, county, town or municipal officer shall not be changed after his election or appointment or during his term of office," and that the latter prohibits a change in the salary of a public officer during the term for which he is elected. The plaintiffs contend that 5 per centum of all public moneys which a county clerk is required to collect and pay into the treasury, was a fixed fee for such service pertaining to the office when they were elected and inducted into office, and that it is beyond the power of the General Assembly to require them to perform any such service and to deny such compensation and that the statute should not on that account be so construed; while the defendants contend that to permit the plaintiffs to retain the 5 per centum in controversy would be to authorize a change in their compensation during their terms of office, and, hence, violative of the cited provisions of the Constitution. The compensation of the office of county court clerk arising wholly from specific fees and commissions, it is apparent that section 235 of the Constitution is not involved, because that has relation only to salaried offices. It is, also, apparent that the invoking of section 161 of the Constitution, is without need upon the part of either the plaintiffs or defendants, unless the legislature has by existing legislation, attempted to authorize the plaintiffs to retain as compensation 5 per centum of the license taxes, which they are required to collect and pay over, by chapter 90, *supra,* or to take away from them some fixed source of compensation of their offices and if

such legislation does not exist, it is unnecessary to decide whether section 161, *supra,* would or would not effect it. In the light of the conclusion which has been arrived at, it is altogether unnecessary to discuss the effect of 161 or 235, *supra,* upon the rights of officers, with the distinction to be drawn between offices to which a fixed salary is attached, and those of which the compensation is specific fees and commissions.

It is very well settled that it is within the power of the legislature to add to the duties of an office after an incumbent has been elected, and during his term of office, and he will be required to perform those duties although no compensation is provided at all for the performance of the additional duties.

It has been consistently held that to add to the duties of a salaried office during the term of an incumbent, does not entitle the incumbent to any additional compensation on account of added duties, and as applied to an office, the compensation for the duties of which are specific fees for certain specific duties of the office, that the incumbent will not be entitled to compensation for any other duties than those for the performance of which compensation is provided. The other duties of such an office are considered ex-officio duties which the incumbent must perform by reason of his holding the office. 29 Cyc 1424; Mitchell v. Henry Co., 124 Ky. 833; Brown v. Laurel Co. Fiscal Court, 75 Ky. 747; James v. Duffy, 140 Ky. 607; Spaulding v. Thornberry, 31 R. 738; Jefferson Co. v. Waters, 114 Ky. 48; 34 Am. Rep. 66, and many other cases of the same and similar holdings.

Hence, although chapter 90, *supra,* required the plaintiffs as a duty of their respective offices to collect the license taxes therein provided for, and to pay over same to the state, their right to have and retain a commission of 5 per centum, or any other sum, would depend entirely upon whether authority for such action can be found in the statutes of the state now existing, for it has been heretofore held that neither a state nor county ever becomes indebted to any of their agents by implication, and that such agent in order to hold a state or county responsible for a claim, must show a legal obligation on the part of state or county to pay it. Wortham v. Grayson County Court, 13 Bush 53. This principle is emphasized by section 1749, Ky. Stats., which provides that "No fee bill

shall be made out or compensation allowed hereafter for any ex-officio services rendered or to be rendered by an officer.''

To determine the merits of plaintiff's contention the result depending upon a construction of the present statutes applicable to such subjects, will make necessary the ascertainment as to whether or not the legislature, in enacting chapter 90, intended that the clerks should have the right to a commission of 5 per centum on the license taxes as claimed by them.    This is arrived at from all the provisions of chapter 90, *supra*, and from a consideration of any other existing statutes which are in *pari materia* with it.    The provisions of chapter 90, *supra*, which have been cited and the other provisions of that chapter, indicate very clearly that the legislature intended that it should embrace all of the statutory law intended to be enacted, pertaining to the subject of regulating the use of motor vehicles, the licenses for operating same and the collection and disbursement of the license taxes arising from that source.    It is intended to be a very comprehensive act and the provision in it by which it is declared that all laws and parts of laws in conflict with its provisions were repealed, indicates clearly that it was meant to embrace all statutory provisions pertaining to the subjects legislated about.    It is, also, clear that the legislature intended to adopt a different system for the collection and disposition of the funds arising from the license taxes imposed by chapter 90, than is applied to other license taxes imposed by other laws.    The entire funds arising from licenses imposed by chapter 90, *supra*, are to be devoted to the improvement and building of the public roads in the state, while the great bulk of other license taxes imposed, come into the general expenditure fund of the state.    The previous legislation in regard to licenses for the operation of motor vehicles may be looked to to ascertain the intention of the General Assembly in enacting chapter 90, and especially the act of 1914, which is chapter 88b, Ky. Stats., and which is repealed by the repealing clause of chapter 90, and the other acts preceding it.    It will thus be seen that the previous legislation required the collection and paying over to the treasury of the license taxes upon motor vehicles, without any commission allowed to any official, whose duty it was to make the collections from which it appears that the policy of the state has been from the first legislation upon that sub-

ject, to require the collection of these taxes without any cost to the state treasury in the way of a percentage to the collector, and such policy must at least be persuasive of the purpose of the legislature, when it enacted chapter 90, *supra,* and wherein is not incorporated any provision for a percentage to the clerks. Looking now broadly to the requirements of chapter 90, which for the first time imposed the duty of collecting the license taxes upon the operation of motor vehicles upon the county clerks, it is found that section 3, of that act, provides that the clerk shall receive and file the application for a license, and shall receive the license tax and give to the owner a receipt containing the registration number, and the information included in the application, and two plates bearing the number, and for this service the statute provides as follows:

"For services performed, the owner shall pay the county clerk the sum of thirty cents for registration." When a licensee has lost the registration plates and applies for duplicates, subsection (c) of section 3, *supra,* requires him to pay and the clerk to receive the sum of fifty cents for each plate, and to issue to the licensee a receipt therefor, "and for which service the owner shall pay the clerk the sum of forty cents." The same subsection provides that upon receipt of the duplicate plate or plates, the clerk shall notify the licensee, by mail, and the licensee shall return to the clerk the receipt given him for the payment of the price of the duplicate plates, and upon the delivery of the plates, the statute provides: "And for this service the owner shall pay the clerk the sum of forty cents." When a purchaser of a vehicle from a licensed owner desires a transfer, he is required to present an endorsed receipt, pay the transfer fee of one dollar to the clerk, and for which the clerk gives him a receipt, subsection 4 of the act thus provides that "For his services herein, the purchaser shall pay the clerk the fee of forty cents." When the clerk collects the tax from an applicant for a chauffeur's license, issues him a receipt and gives him a numbered metal badge, subsection (a) of section 5 of the act, thus provides "And for his services, the registrant shall pay to the clerk a fee of forty cents." Subsection 4 of the act provides that when a purchaser "junks" or otherwise renders the automobile unfit for future use, that he will be relieved of the duty of trans-

ferring registration by the delivery of registration plates, endorsed receipt and a second copy of the bill of sale to the clerk, who will return the plates, receipt and copy of the bill of sale to the Commission, "and for these services the purchaser shall pay the clerk the sum of forty cents." Subsection (f) of section 17 of the act, *supra*, requires the clerk to report and remit to the Commission on each Monday all moneys collected by him during the previous week, and subsection (d) of the same section indicates the moneys to be collected and remitted as "the fees due the state as provided for in this act." Subsection (g) of section 18 of the act, provides that at the end of each fiscal year the Tax Commission shall "further require an accounting from the clerk in each county for all moneys received by him under the provisions of this act, after the deduction of his fees, under this act, etc." The legislative intention to require the clerk to pay over the entire sum of the license taxes collected by him under the act, and to compensate him for his services only to the extent provided for in the act, could not very well be expressed more strongly than is done by the foregoing language. It is suggested that the language of the statute "deducting his fees under this act" means the 5 per centum claimed by the plaintiffs, but this contention is necessarily not well grounded, since the fees to be deducted are those provided for by the act, and nowhere in the act is a commission of 5 per centum to the clerk provided for. The language manifestly has reference to the fees above enumerated to be paid to the clerk by the licensees, because they are the only fees provided for under the act, and the language was used to make the meaning clear, as the fees are collected by virtue of the act and the writer having broadly provided, that "all moneys collected under the act" were to be accounted for, the language above stated was then added, to except for the officer, the fees allowed to him under the act. By the terms of the act, the legislature provided, at least, for the compensation, it intended the clerk to have for collecting the license taxes, along with the other services it required of him, for some of which no compensation was provided at all, and although the compensation may be considered scant and insufficient and as imposing an onerous duty upon the clerk beyond the value of his compensation, with that question the courts can have nothing to do, as that was a question wholly within the legislative discretion. The fail-

ure of the legislature to provide any compensation for the clerk for the responsibility of holding and remitting the funds collected from the license taxes, does not authorize the clerk to have a claim against the state on that account as heretofore stated, unless there is some statute which authorizes such compensation. It is clear enough that chapter 90, *supra*, does not contain any provision permitting the clerk to retain any per centum of the taxes collected, but requires him to pay over to the treasury, not a part "but all the moneys collected under him during the previous week" and the tax commission is required to cause the clerk to account not for a part of the sum of the taxes collected but "for all the moneys received by him under the provisions of this act, after the deduction of his fees, etc." If the legislature did not intend to preclude by the above language the right of the clerk to retain a percentage of the taxes collected, there could be no reason for the use of the word "all" when referring to the moneys to be paid over to the treasury, in defining the duties of the clerk, and its reiteration, when the duties of the Tax Commission are defined.

The plaintiffs, however, contend that sections 4195 and 4242 of Ky. Stats. control their rights in the premises and entitle them to retain the 5 per centum of the license taxes, in controversy. Section 4195 is as follows:

"When such license is granted, the county clerk shall fill up the original stub. The original he shall deliver to the person to whom it is granted, and shall within two days thereafter forward the duplicate to the auditor of public accounts, who shall charge the tax to him, and the clerk shall once each month, pay the license tax collected into the state treasury; and said clerk as compensation for his services shall be allowed 5 per centum commission on all license tax collected and accounted for by him."

Section 4242, Ky. Stats., provides as follows:

"Each circuit and county clerk shall make out an account of all taxes and other public money received by him up to the first day of each circuit court; and said report shall show in detail of whom said moneys were received, for what and when received, and shall be verified by him and entered of record; and he shall pay over the public money remaining in his hands to the trustee of the jury fund, unless otherwise provided by law, so much thereof as the court may by order direct as being necessary for the payment of the jurors; and the original account cer-

tified with the order of the court shall be transmitted with the balance of the funds to the auditor. The clerk shall be allowed 5 per centum commission on said sums reported and paid by him. . . ."

As a reason for the contention, that sections 4195 and 4242, Ky. Stats., apply and entitle the plaintiffs to the percentage of the taxes claimed, it is insisted that neither of the sections has been repealed, nor in any manner modified, and should be read into the provisions of chapter 90, *supra*. That they have not been repealed nor modified by chapter 90, nor any other statute, seems to be true as neither of them bears any relation or was ever intended in any way to have effect, upon the collection of license taxes, for the operation of motor vehicles. The statutes, *supra*, are sections of an act of March 23, 1906, and that statute imposed a great many license taxes, many of which were to be granted by the clerk of the county court, who was made the collector of certain of the license taxes, therein designated. The statute of March 23, 1906, which is now chap. 108, Ky. Stats., also, provided, that all licenses should be granted by the clerk of the county court, when not otherwise provided by law. There were imposed other license taxes, where the licenses were to be granted by other officers, and the collection of the taxes, imposed upon others. Sec. 4195, *supra,* authorized the payment to the clerk of a commission of 5 per centum upon the sum of the license taxes, collected by him, and paid to the treasurer under chapter 108, Ky. Stats., and upon the license taxes designated for his collection, by the provisions of that chapter. The taxes collected from those licenses, the clerk was required to report to the auditor, within two days, and once in each month to pay the taxes into the treasury. The section, *supra,* could have had no relation to a tax upon motor vehicles, as at the time of its enactment, no such licenses were required. The things, for the doing of which the clerk was authorized to license, and to collect the taxes, and to receive a commission for collecting, were all specifically designated in the statute of which section 4195, is a part. Such section is in full force and effect touching the purposes for which it was enacted. While a license tax created since the enactment of that statute, with no provisions as to its collection, or other specific arrangement, different from the license taxes for the operation of motor vehicles was designated as collectible by the clerk, would fall under the

provisions of section 4195, *supra,* a license tax thereafter
created, although to be collected by the clerk is necessar-
ily subject to the conditions, provided for by the statute
creating it, if any different conditions are imposed, such
as to apply to the motor license taxes, provided for by
chapter 90, *supra.* When license taxes were imposed
upon the operation of motor vehicles upon the highways,
the taxes were made payable to the secretary of state,
and afterwards to the commissioner of motor vehicles,
as a subordinate of the secretary of state, and no com-
missions were allowed or paid for the collecting of the
taxes.   When by chapter 90 *supra,* the duty of collecting
the license taxes for the operation of motor vehicles was
imposed upon the county clerks, it was upon different
terms and under different regulations, from those gov-
erning the collection of other license taxes, which they are
now and had been theretofore authorized to collect, and
one of the conditions was, that they should pay the en-
tire tax collected by them, into the treasury, upon each
Monday, and another was that by the terms of the statute,
imposing the duty, no commission for the collection was
provided for, but in terms was denied.   If section 4195,
*supra,* should be attempted to be added to chapter 90, no
requirement of it would be consistent with the require-
ments of chapter 90 with reference to the duties of
the clerk.   It is suggested, that in addition to a com-
mission of five per centum upon the license taxes, which
the clerk was authorized to collect, under chapter 108, Ky.
Stats., he was, also, entitled to collect a specific fee for
issuing a license, by section 1720, Ky. Stats., and for such
reason the fees allowed him for specific duties performed
by him, under chapter 90; *supra,* was not in payment for
his services, in collecting and remitting the taxes.   The
difference in the two statutes, is, that, chapter 108, Ky.
Stats., expressly allows the commission, and section 1720,
*supra,* expressly provides the fee for granting a license,
while chapter 90, *supra,* expressly provides the fees for
certain specific services, among which is collecting
the taxes, and by the strongest implication amounting
to an express denial, denies any commission or
percentage for holding and remitting the money,
and imposes such duty and others upon the clerk
as ex-officio duties without compensation.   Section
4195, *supra,* was in force, when chapter 90, was en-
acted, and having been in force for many years, there-

tofore, the legislature is presumed to have known of its requirements and limitations, and to have considered same when enacting chapter 90, but, it cannot be held, that it contemplated or intended, that the collection of taxes, provided for in that chapter, should be subject to the conditions of section 4195, since the latter statute expressly provided for the payment of the taxes once each month by the clerk to the auditor, and the retention of five per centum as a commission, while the moneys collected by the clerk under chapter 90, the legislature provided, should be remitted to the treasury through the tax commission once each week, and instead of expressly providing for the retention of a percentage, expressly required the remission of the entire sum collected. Hence, if by any construction section 4195, could be added to chapter 90, as a part of it, all of its provisions would be inconsistent with the provisions of chapter 90, and would fall under the effect of the repealing clause in the latter statute.

Section 4242, *supra,* manifestly applies to public moneys which it was the clerk's duty to collect, under chapter 108, Ky. Stats., and other statutes, other than license taxes, since section 4195 applied to license taxes, specially. Under the law, the clerk had the duty of collecting special taxes, such as taxes upon deeds, mortgages, powers of attorney, and in some instances certain taxes upon property, and such like, and section 4242, was a direction as to all such public moneys, and other than license taxes. If such section was attempted to be added to and read with the provisions of chapter 90, all the provisions of it would be contradictory of the provisions of chapter 90, unless the single sentence, which provides that the clerk shall be allowed a commission upon the sums collected and paid over by him could be held consistent with it, and to insist, that the one sentence, which manifestly refers to public moneys, then authorized to be collected, by statutes then in force, and to moneys other than license taxes, should be lifted out of the section, discarding the other provisions of it, and its context and held to apply to the taxes collected under chapter 90, is not supported by any sound reason. Hence, it is concluded that neither section 4195, nor 4242, has any application to the provisions of chapter 90, *supra.*

It is therefore concluded, that the clerks of the county courts, cannot retain five per centum of the license taxes collected by them under the provisions of chapter 90,

*supra,* and the temporary injunction granted by the circuit court is dissolved.

Judges Thomas, Settle, Clarke and Clay considered the motion with me and concur in the conclusion reached.