Gray v. Methodist Episcopal Church, South,
Widows and Orphans Home in State
of Kentucky.

(Decided March 18, 1938.)

HUBERT MEREDITH, Attorney General, and JESSE K. LEWIS, Assistant Attorney General, for appellant.

EDWARD C. O'REAR and ALLEN PREWITT for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—
Affirming in part and reversing in part.

Appellant is, and was at the time stated in the pleadings, county court clerk of Woodford county, and as such charged with the duty of issuing motor vehicle licenses in accordance with pertinent statutes.

Appellee, the "Methodist Episcopal Church, South, Widows and Orphans Home in the State of Kentucky," is a corporation duly organized by an act of the General Assembly in 1871, as a. nonstock, nonprofit making or sharing corporation. It was empowered

> "To use all monies from any sources, coming to its hands to provide and maintain a home for the destitute widows and orphans of deceased members of the Methodist Episcopal Church South, and others who may be placed under its charge."

In accordance with its charter, and in furtherance of its purpose, some years ago it acquired a tract of land and buildings thereon, situated a short distance east of Versailles, and there re-established the home, and at the time of the institution of this suit was caring for more than one hundred orphan children of school ages, who were in attendance in the common schools of Woodford county.

The above facts were set out in appellee's petition, and in addition it was alleged that, in order to furnish transportation for the children, it was necessary to have a motor vehicle, and it purchased one; that later it presented to appellant evidence of its title thereto, and requested registration thereof, but tendered no fee. Appellant refused to issue to it a certificate of registration. It is alleged in the petition that appellant refused because appellee did not manifest that there had been paid the 3 per cent. "use tax" as was required by section 4281i-2, Kentucky Statutes.

It was also alleged that appellee's sole purpose and functions constituted a purely public charity, as con-

templated by section 170 of the Constitution, and therefore it was entitled, under the provisions of said section, to have its car duly registered, without the payment of any fee.

The suit was begun and practiced throughout under our Declaratory Judgment Code provisions. Civil Code of Practice, sec. 639a-1 et seq. The appellant demurred to the petition; the court overruled same. The appellant declined to plead further, and the cause was submitted for a declaration of rights and final judgment. The court adjudged that appellee was an institution of purely public charity; that, being such, it was entitled to have appellant register its car and issue proper certificate, without the payment of license fee, or use tax, and directed appellant to issue to appellee the proper certificates as required by law. To this judgment defendant below excepted, and was granted an appeal.

While it was alleged in the petition that the clerk had refused the registration because of the nontender of the use tax, in the brief for appellant it is pointed out that the statute specifically exempts a charitable institution from the payment of the latter tax, but argued that the petition was nevertheless demurrable, since appellee in seeking registration had refused to tender the fee required by section 2739g-2c, Kentucky Statutes.

The parties agree that appellee's business, and the conduct thereof in the manner stated, brings it within the class of "public charities" as contemplated by section 170 of the Constitution, and the definition of "purely public charities," as declared in opinions of this court. After observing its charter, and the undenied allegations of the petition, we are in accord with both parties.

Appellant in argument takes the position that since the exaction of a fee for registration of motor vehicles is not the exaction of money for revenue purposes, but solely for regulatory purposes, or as usually termed in describing such exactions, for police purposes or regulation, section 170 of the Constitution does not nor has it been construed by this court to exempt, or to have the effect of exempting, charitable institutions from its payment. Appellee contends that the all-inclusive language of section 170 of the Constitution exempting insti-

tutions exercising the functions and privileges of a "purely public charity" necessarily includes, and has been construed to include, the license tax herein concerned. So much of the section of the Constitution, supra, as has bearing on the question, provides:

"There shall be exempt from taxation public property used for public purposes; * * * institutions of purely public charity, * * * and all laws exempting or commuting property from taxation other than the property above mentioned shall be void."

Appellee correctly takes the position that the exemption set out in the section of the Constitution, supra, especially in so far as it exempts public charities from taxation, was intended to and has been so construed as to exempt such charities from the exaction of "taxes." Taking up first appellant's contention, we find that it has been held that the exemption to public charities is to the institution. This is made clear from a reading of Corbin Y. M. C. A. v. Commonwealth, 181 Ky. 384, 205 S. W. 388, 1 A. L. R. 264; and Trustees of Kentucky Female Orphan School v. Louisville, 100 Ky. 470, 471, 36 S. W. 921, 19 Ky. Law Rep. 1091, 40 L. R. A. 119. In both these cases it was definitely decided that the exemption intended by section 170 of the Constitution was to the "institution." In other words, the exemption was intended to extend further than an exemption of ad valorem on property, directly used by the institution in the operation of its charity. This is made clear by reference to the Orphan School Case, supra, and is no less clear when we read the Y. M. C. A. Case, supra.

Appellee contends that the Y. M. C. A. Case is controlling. In that case we held that, since the exemption intended was from taxation against the institution, it was not required to pay the license tax fee required by section 4224, Kentucky Statutes, for the purpose of operating a restaurant. We said in that case:

"It is insisted for the commonwealth, and this seems to have been the opinion of the trial court, that the exemption granted to institutions of purely public charity is an exemption from ad valorem or property taxes, and that such institutions are not entitled to exemption from the payment of occupational license fees such as are imposed by section 4224 of the Statutes. Whether or not this is true

is the only question for decision in this case. That an occupational tax usually, and especially in this case, is not a property tax, is agreed by both parties to this controversy; and it is further agreed, as has been decided by this court in Hager v. Walker, 128 Ky. 1, 107 S. W. 254, 32 Ky. Law Rep. 748, 15 L. R. A., N. S., 195, 129 Am. St. Rep. 238, that section 4224 of the Statutes is a revenue measure, and not a police regulation; nor does the commonwealth contend that under * * * section 170, which, as uniformly construed by this court, does not exempt from taxation all of the property of such institution, the use or income from which is confined to their authorized activities, * * * but insists that it is only the property of such institutions, when so employed, that is exempted."

Then follows the court's reasoning leading to the final conclusion, that it is the "institution" and not alone the "property" of such institutions, intended to be exempt from "taxation." In its conclusion it follows the construction given by this court in Trustees of Kentucky Female Orphans School v. Louisville, supra (a thoroughly well developed and considered case), referred to and upheld in Commonwealth v. Y. M. C. A., 116 Ky. 711, 76 S. W. 522, 25 Ky. Law Rep. 940, 105 Am. St. Rep. 234, both of which, however, related to the exemption of the institution from ad valorem taxes.

Concluding, as we do, that the cases cited properly construe section 170 of the Constitution to exempt an "institution" of purely charity from taxation, the question narrows down to this: Is such institution exempted by the section in question from the payment of a license fee or license tax, whichever it may be called by choice, when the same is exacted under the police power of the state, or when the exaction of the tax or fee is for police or regulatory purposes? The answer depends upon determination of whether the exacted fee is for the suggested purpose, or exacted for the purpose of raising revenue. If the fee exacted is for revenue only, appellee's contention should prevail; if it is not, then we find no possible ground for so construing section 170, as to exempt the institution from the payment of the regulatory fee, since "taxation" as used in the section supra is intended to mean, and does mean, taxation for purposes of raising revenue.

The general rule is that exempting statutes are to be strictly construed as against the one claiming the exemption. Exemptions will never be implied except by the most satisfactory and imperative language. Martin v. High Splint Coal Company, 268 Ky. 11, 103 S. W. (2d) 711; City of Louisville v. Cromwell, 233 Ky. 828, 27 S. W. (2d) 377; Commonwealth Life Insurance Company v. Paducah, 244 Ky. 756, 52 S. W. (2d) 704. With this rule in mind, we are to consider the nature of the $4.50 fee involved in this case, and counsel agree that this is the sole controversial question.

The confusion (if there be such) in regard to the particular fee here in question has arisen from the fact that in the early day of motor vehicle regulation the fee exacted was apparently somewhat more than such as was necessary to properly "police" or regulate under the police power the operation of a newly introduced vehicle for transportation over our public highways. It was argued in the case of Smith v. Commonwealth, 175 Ky. 286, 194 S. W. 367, among the first cases testing the question in our courts, that since the fee exacted was more than necessary for strictly regulatory purpose, the statute was void, as it resulted in a double taxation, and violated the "uniformity of taxation" section of the Constitution. Constitution, sec. 171.

This court took cognizance of the fact that the fee exacted was, perhaps, more than was necessary for strictly "police" purposes, as had been theretofore defined, yet concluded that the statute, the primary purpose of which was to regulate and supervise the privilege of using a vehicle on the highway, "is not primarily for the purpose of raising revenue, and is valid as a police regulation." It was held there, as it has been in many later cases, that the funds, being used to repair damage to the highways, occasioned by the use of this new vehicle, constituted it a valid exercise of the police power. It may be noted that the fee exacted in 1917 was $20, here the fee is $4.50.

In later cases, in defining the nature and character of the fee exacted for the privilege of operating a motor vehicle over the highways of the state, we have not departed from the conclusion reached in the Smith Case, supra, i. e., that such license represented and was an exaction of moneys for the regulation of vehicles oper-

ating on the highways. This will be evidenced by reference to City of Mayfield v. Carter Hardware Company, 191 Ky. 364, 230 S. W. 298; Lewis v. James, 191 Ky. 769, 231 S. W. 526. Perhaps an earlier case than the Smith Case, supra, but to the same effect, is City of Newport v. Merkle Brothers Co., 156 Ky. 580, 581, 161 S. W. 549. As bearing on the question of the nature of a similar exacted fee reference may be had to Commonwealth v. Fowler, 96 Ky. 166, 28 S. W. 786, 16 Ky. Law Rep. 360, 33 L. R. A. 839; McGlone v. Womack, 129 Ky. 274, 111 S. W. 688, 33 Ky. Law Rep. 811, 17 L. R. A., N. S., 855.

Recently we had occasion to determine the nature of the motor vehicle license fee in a case where the contention was that its exaction under the particular facts of that case constituted double taxation. Harco Corporation v. Martin, Commissioner of Revenue, 271 Ky. 572, 112 S. W. (2d) 693, 700. We clearly and explicitly defined the character of a similar fee. After quoting from prior decisions, we said:

"The registration charges, therefore, * * * imposed and collected under the motor registration acts, are not for the purpose of raising revenue, but only for the purpose of creating a fund, presumably adequate to enforce police regulatory requirements, and to protect against damage produced, and their imposition may not be considered in dealing with the question of 'double taxation,' by a purely revenue statute."

The principle enunciated in the foregoing cases is well stated in 26 R. C. L. p. 17, section 4, as follows:

"Some governments derive considerable revenue from a judicious exercise of the power of regulation; but since a tax is a charge imposed for the purpose of raising revenue, a charge primarily imposed for the purpose of regulation is not a tax, and is not subject to the constitutional limitations upon the power of taxation. * * * If the primary purpose of the legislature in imposing such a charge is to regulate the occupation or the act, the charge is not a tax even if it produces revenue for the public." See, also, Chaddock v. Day, 75 Mich. 527, 42 N. W. 977, 4 L. R. A. 809, 13 Am. St. Rep. 468.

As bearing somewhat on the question at issue, it might be pointed out that we have held that public institutions and public charities are not exempted from the payment of special assessments (street improvements), although their exaction, followed by a failure to pay, creates a lien on the real property. In the case of City of Mt. Sterling v. Montgomery County, 152 Ky. 637, 153 S. W. 952, 953, 44 L. R. A., N. S., 57, in discussing this question, and with direct reference to section 170 of the Constitution, we said:

"This constitutional and statutory exemption from taxation only refers to general ad valorem or property taxes that may be levied by the state, city, county, or taxing district under authority of law."

In this case is cited Zable v. Louisville Baptist Orphans' Home, 92 Ky. 89, 17 S. W. 212, 13 Ky. Law Rep. 385, 13 L. R. A. 668, in which the home, a purely charitable institution, was not relieved of a special assessment, since its exaction was not "taxation" as contemplated by section 170 of the Constitution.

In view of the expressions of the court reflected in the foregoing citations, we cannot escape the conclusion that section 170 of the Constitution is not so elastic, nor can it be made so, as to relieve the appellee of the payment of the license fee for the registration of its motor vehicle.

The exaction of the registration fee required by the statute quoted is not "taxation" in the sense the word is used in said section. Section 4281i-2 is a part of the "Revenue and Taxation" statute. The "tax" thereby imposed is on the "use of every motor vehicle"; it is a revenue statute pure and simple. The exaction of that fee is for revenue (general expenditure) purposes, and it is noted that the statute exempts charitable institutions from its payment.

We, therefore, declare the rights of the parties to this controversy to be: The appellant should register the car of appellee upon the payment of the fee for such registration in the effect when it is sought to obtain a certificate, upon appellee's showing title, and in other respects complying with the motor vehicle registration law then in effect. He will not, as a prerequisite to registration, require appellee to pay the tax imposed by

654

section 4281i-2, since the statute, section 4281i-3, exempts the institution from payment thereof.

Judgment reversed in part and affirmed in part, with direction to enter judgment in conformity herewith.

Whole court sitting.