## Corbin Young Men's Christian Association v. Commonwealth.

(Decided September 24, 1918.)

### Appeal from Whitley Circuit Court.

1. Taxation—Charities—Exemptions.—Section 170 of the Constitution exempts from taxation, for general governmental purposes, not only the property of institutions of purely public charity, but also the activities of such institutions that are consistent with and in the furtherance of the purposes for which they were organized.

2. Taxation—Occupation Tax.—The license fee prescribed by section 4224, Kentucky Statutes, for operating a restaurant is an occupation tax, and not a property tax, levied for revenue purposes.

3. Taxation—Charities—Exemptions.—The Young Men's Christian Association, agreed to be an institution of purely public charity and to operate a restaurant in connection with and as a part of its building at Corbin, Ky., and not for gain, held to be acting within the scope and in the furtherance of the legitimate purposes for which it was organized and to be exempt from the payment of a license tax, under section 4224, Kentucky Statutes, before engaging in the operation of the restaurant.

R. L. POPE for appellant.

CHARLES H. MORRIS, Attorney General, HENRY F. TURNER, Assistant Attorney General, and J. B. SNYDER for appellee.

Opinion of the Court by Judge Clarke—Reversing.

By indictment the appellant was accused of operating a restaurant in Corbin, Kentucky, without having procured a license so to do as provided by section 4224 of Kentucky Statutes, and, upon trial on an agreed statement of facts, was convicted and fined $60.00 and costs, from which judgment this appeal is prosecuted.

It was held by this court, in Commonwealth v. Young Men's Christian Association, 116 Ky. 717, that a similar local branch of the state organization, located at Owensboro, was entitled to exemption from taxation under section 170 of the Constitution both as a religious society and as a public charitable institution. We shall in this opinion, however, consider appellant only as a public charitable institution because it is given that status in the agreed statement upon which the trial was had. It is insisted for the Commonwealth, and this seems to have been the opinion of the trial court, that the exemption granted to institutions of purely public charity is an exemption from *ad valorem* or property taxes, and that such institutions are not entitled to exemption from the payment of occupational license fees such as are imposed by section 4224 of the Statutes. Whether or not this is true is the only question for decision in this case. That an occupational tax usually, and especially in this case, is not a property tax, is agreed by both parties to this controversy; and it is further agreed, as has been decided by this court in Hager v. Walker, 128 Ky. 7, that section 4224 of the Statutes is a revenue measure, and not a police regulation; nor does the Commonwealth contend that under the exemption provision of our Constitution, section 170, which, as uniformly construed by this court, is much more liberal, especially toward institutions of purely public charity, than the similar provision in the constitutions of other states, does not exempt from taxation all of the property of such institutions, the use or income from which is confined to their authorized activities, as was expressly held by this court in Commonwealth v. Young Men's Christian Association, *supra,* but insists that it is only the property of such institutions, when so employed, that is exempted. Section 170 of the Constitution very plainly by its terms places quite different limitations upon the extent of exemption from taxation extended to different classes of organizations. It exempts all public

"property" used for public purposes. It exempts "places" limited in size, actually used for religious worship. It exempts "places" of burial not held for private or corporate profit. It exempts "institutions" of education not used for gain and the income of which is devoted solely to the cause of education. But it exempts "institutions of purely public charity" without limitations of any kind except as is implied by the descriptive terms employed, "purely public charity" implying, of course, that the institution could not be used for gain, and that whatever income it enjoyed must be used solely for the cause of charity. It will thus be noticed that the very language employed exempts "property" used for public purposes, religious worship or for cemeteries; but that it exempts not the property but the institutions themselves which are engaged purely in public charity or education, if not used for gain by any person or corporation.

The difference in the language employed with reference to the several classes necessarily grants immunity from taxation in varying degrees and explains the different conclusions reached by this court with reference to the different classes, and renders largely inapplicable in cases such as this, involving charitable institutions, the decisions of this court with reference to religious organizations largely relied upon by the Commonwealth, for in such cases it is clearly the property actually used for religious worship and in a limited amount that is exempted, while with reference to institutions engaged in purely public charity, it is the institution itself and not the property owned that is exempted. This difference in the extent of the exemption accorded is clearly pointed out in the case of Commonwealth v. Young Men's Christian Association, *supra*, and in the case of Trustees Kentucky Female Orphans' School v. The City of Louisville, in the latter case it being stated:

"Upon the whole it would seem that when the statute exempts the 'institution' from taxation, and no qualifying words are used showing or tending to show that only the property 'used' by the institution, or 'connected' with the institution, is to be exempt, then the associated entity—the corporate being—with its estate as an entirety, is embraced by the word 'institution.' "

This quotation was cited and approved in Commonwealth v. Young Men's Christian Association, *supra*;

wherein cases from this court relating to religious, fraternal, educational organizations and cemetery companies were distinguished, and the different conclusions reached by two other courts, under differently worded constitutional provisions with reference to the exemptions allowed to the Young Men's Christian Association, were explained. So that whatever may be the extent of the exemption accorded the Young Men's Christian Association in other jurisdictions, which is not by any means uniform, as will be seen by reference to the annotations found in 50 L. R. A. (N. S.) 1197, L. R. A. 1916, D. 272, and L. R. A. 1918, C. 898, it is evident that by the decisions in the case of the Commonwealth v. Young Men's Christian Association, *supra*, and Trustees Kentucky Female Orphans' School v. City of Louisville, *supra*, and the many more recent cases that have cited them with approval, the exemption granted to such institutions of purely public charity, under the peculiar verbiage of our constitutional provision, includes everything that is embraced by the word "institution," and this, we are convinced, includes not only their property but also necessarily all of their activities that are consistent with and in the furtherance of the purposes for which they were organized. It, therefore, results that our present inquiry is narrowed to the determination of whether or not the operation of a restaurant by a local branch of the Young Men's Christian Association, in its building which contains some ninety odd sleeping rooms for the accommodation and entertainment not only of its members, but of whomever may apply, is consistent with the purposes and legitimate activities of such organization, and reasonably tends toward the attainment of its charitable aims.

The fact that for the meals, lunches and soft drinks that are served in the restaurant charges are made, to both members and non-members of the organization, although the charges to the latter are possibly slightly in excess of those of the former, but without profit, merely emphasizes the purely public character of this branch of the service and does not in anywise alter its charitable quality, as has been frequently decided in this and other states. If such institutions as this are liable to the payment of the license tax for operating a restaurant, then they are also liable, under the same section of our Statutes, for maintaining bowling alleys, billiard

rooms and sleeping rooms if more than twenty-five rooms are provided. It is a significant fact that no case is found from this or any other court where an attempt has been made to enforce the collection of any such fee against such an institution, although it is a matter of common knowledge that such institutions frequently, if not usually, provide billiard rooms, bowling alleys and other forms of recreation and amusement in addition to a gymnasium; and that in their "endeavor to seek out young men and bring them under moral and religious influences" it has of late years become almost a universal practice to provide sleeping apartments for members and non-members as well, which practice, under section 4224 of our Statutes, and similar statutes of other states, would render them liable for a hotel license fee unless they are exempt under a constitutional provision such as we are considering. Yet, so far as we are informed, no attempt has ever been made to collect such a fee from such an organization. As stated in Commonwealth v. Young Men's Christian Association, *supra*:

"The endeavor (of such institutions) is to reach the boys and young men before they need alms, and before they are reduced to beggary, and, by training the minds, and teaching them how to use and preserve their bodies, and how to live useful and honest lives, to save them from the lower grades of misfortune, so familiar in the utter helplessness of abject poverty and disease and want. This is accomplished by institutions keeping open, attractive quarters, where libraries of useful books, current magazines and newspapers, innocent games of amusement, a gymnasium for the exercise and development of the body, and night schools, affording additional opportunities to such as have not had sufficient advantages in education, are all accessible to whomsoever will avail himself of them, without regard to creed or nationality. Lists of decent boarding houses are kept, to which strangers are directed; proper acquaintances and associates are formed, and useful and moral instruction imparted."

When this was written, in September, 1903, it will be noticed it is stated that these associations kept lists of decent boarding houses to which strangers were directed, but now we find such institutions ordinarily equipped to house strangers overnight, which certainly is but a reasonable development or extension of the same

endeavor to afford not only to the stranger, but to the members of the organization, proper surroundings, formerly attempted by keeping lists of decent boarding houses, but which, experience no doubt has taught, may be better accomplished by providing sleeping quarters within the association building; and to our minds it seems quite possible that in some communities at least the same experience has taught those in charge of such institutions that the endeavor to surround those whom it seeks to serve with wholesome, healthful and moral surroundings may be improved by furnishing not only clean rooms but wholesome meals and non-intoxicating beverages as well. Both of these developments seem to us, the one as much as the other, but natural, and entirely consistent with and tending toward the accomplishment of the well known purposes for which these institutions were devised and organized, and we are quite unwilling to hold that the operation of a restaurant in connection with the Young Men's Christian Association building is an activity inconsistent with the purposes and objects of this organization.

We have not overlooked the fact, called to our attention in appellee's brief, that exemptions are of grace and to be strictly construed. Nor are we unmindful of the exceptions, from exempting provisions, of assessments for street and sidewalk construction recognized as an exception not only in this state, but universally, so far as we are informed, because of the fact that while an exercise of the taxing power, these assessments are not levied for general governmental purposes, but for a particular purpose of peculiar and special advantage to the abutting property. The tax attempted here is not special, in such or any other sense, but is, as we have seen, primarily for revenue purposes and to help defray ordinary governmental expenses, and as such, under whatever name given it, is subject to constitutional exemptions and limitations; but the constitutional provision of uniformity does not, of course, include or refer to the property and institutions specifically exempted from taxation by the Constitution.

Being of the opinion that an institution of purely public charity, as it is agreed that appellant is, is by our Constitution exempt not only from the payment of ad valorem or property taxes but also from the operation of any and every revenue producing measure upon such

of its activities as are confined to, done in the furtherance of and not inconsistent with the charitable purposes for which it was organized, it results that appellant is not liable to the payment of a restaurant license tax under section 4224, and the judgment is, therefore, reversed, the whole court sitting.