## Board of Education of Kenton County v. Talbott, Commissioner of Finance Department, et al.

## Same v. Commonwealth ex rel. Martin, Commissioner of Revenue.

March 28, 1941.

544

John E. Shepard for appellant.

Hubert Meredith, Attorney General, Jesse K. Lewis, Assistant Attorney General, and J. J. Leary for appellees.

OPINION OF THE COURT BY SIMS, COMMISSIONER— Affirming.

The County Board of Education of Kenton County sued the Commissioner of Finance and other State officers setting forth its responsibilities and duties under the law to provide school facilities for the children of the county, and alleging that it was entitled to receive for the year 1937-1938 from the State Treasury $6,915.24, but that the Commissioner of Finance had refused to approve the requisition therefor issued by the Superintendent of Public Instruction, and without authority of law had caused a deduction of $2,836.00 to be

made and paid to the Department of Revenue. Injunctive relief was prayed.

In a few days the Commonwealth, on relation of the Commissioner of Revenue, sued the Board of Education of Kenton County, charging that the Board had purchased, without the State and imported, between December 7, 1935, and February 21, 1936, 16,205 gallons of gasoline on which it was required to pay a tax of five cents a gallon under the terms of Chapter 150, Section 1, of the Acts of 1932, which was as follows:

"A State tax of five (5) cents per gallon is hereby imposed on all gasoline, as defined herein, sold in this Commonwealth at wholesale as the words 'at wholesale' are hereinafter defined. * * *

"The words 'at wholesale,' as used in this act shall be held and construed to mean and include any and all sales made for the purpose of re-sale or distribution, or for use, and, as well, the gasoline furnished or supplied for distribution within this State whether the distributor be the same person who so furnished the same, his agent or employe, or another person; and also to mean and include any person who shall purchase or obtain gasoline without the State and sell or distribute or use the same within the State."

The petition set out that that act was repealed at the 1936 Third Extraordinary Session of the General Assembly by Chapter 6 of the published acts for that session, now Section 4281g-1 et seq., Statutes, and between September 5, 1936, and January 3, 1938, the Board had in like manner bought 40,515 gallons of gasoline under that act, which provides in part as follows:

"An excise tax of five (5) cents per gallon is hereby imposed on all gasoline received in this Commonwealth as the word 'received' is hereinbefore defined in this Act. * * * When it shall have been caused to be imported into the State of Kentucky by any person for use, distribution, or delivery and sale and when it shall have been placed in tanks or other containers for use or subject to withdrawal for use, distribution or sale and delivery." Section 4281g-2.

It was further charged that the Board of Education

had failed and refused to procure a license as a wholesale dealer in gasoline or to file a bond with the Department of Revenue as provided by the act of 1932 (Chapter 150, Section 7a) and the Act of 1936 (Chapter 6, Sections 18 and 19 of the Third Extraordinary Session, Kentucky Statutes, Sections 4281g-17, 4281g-18) and had refused to make the reports required by that act. The petition claimed the Board was liable for a penalty of 20 per cent on the amount found to be due, and interest from the date when due until paid; and also an additional penalty of 20 per cent when the amount is collected by court proceedings. Accordingly, judgment was prayed for the principal sum of $2,836 and a penalty of $1,134.40 with interest on certain sums from various dates beginning with January 31, 1936.

The two suits were consolidated. **The substance of** the Board's pleading is as follows:

1. The Board is charged with the duty under the Statutes of providing transportation for two thousand school children of the county outside of the cities, over an area of 160 square miles; the only practical and economical means of transporting them is by motor busses and the most economical method is to purchase gasoline in tank car lots and handle and distribute the same at convenient points with its own facilities. All of the gasoline was used exclusively for that purpose. The Board is not a dealer or distributor of gasoline or empowered as such within the meaning of Section 4281g-1, Subsection (c) or Section 4281g-2 of the Statutes.

2. The only revenue available to the Board out of which any taxes claimed to be payable on the gasoline could be paid is that provided by "taxation * * * for purposes of common school education," which is irrevocably dedicated and appropriated to the common schools and to the other purpose by the terms of Section 184 of the Constitution.

3. By the provisions of Section 184 of the Constitution, the revenue for school purposes cannot be diverted or appropriated for construction, maintenance or repair of roads or bridges, the purposes for which the gasoline tax is levied.

4. The Board submitted its budget for each fiscal year to the State Board of Education as required by the

statute and the same was approved. By the terms of Section 4399-45 of the Statutes, the County Board of Education and the members thereof are prohibited from spending any money in excess of that shown in the budget or for any other purpose than shown therein. That in none of the years mentioned were any funds provided for with which to pay taxes on gasoline.

5. The payment of the tax sought to be collected would necessitate the reduction of the school term, affect the scholastic standing of the children of Kenton County, and result in their disqualification from entering recognized standard schools of learning which require 9 months' high school per year as a prerequisite to admission, and would otherwise prevent the Board from performing the duties imposed upon it by law.

6. The Board is now levying and has for many years continuously levied the maximum tax permitted by law.

7. As justification for exclusion from its budget of any provision for the payment of the gasoline tax, the Board pleads that an action was filed in September, 1934, in the Kenton Circuit Court by the Revenue Agent for the State-at-Large against the Kenton County Board of Education seeking to recover the tax on gasoline consumed in its school busses and a judgment was rendered by that court in February, 1936, adjudging the Board not to be liable for the tax, and that judgment is still in effect. It is pleaded in bar of the Commonwealth's right to collect the taxes sought in this action.

8. The Board challenges the contention of the Commonwealth that the Act of 1932 was re-enacted by the Act of 1936. It argues that the title to the latter act is confined solely to the imposition of a tax and the repeal of certain sections of the existing statutes, which relieved it of the payment of the tax under the 1932 act.

The judgment rendered upon the pleadings was in favor of the Commonwealth against the County Board of Education for the tax and penalties, amounting to $3,970.40, and interest, and authorized the deduction of the entire sum from the amount due the Board as its part of the general school fund. Such judgment, of course, carried with it the refusal to enjoin the Commissioner of Finance and other officers as sought in the first suit.

The arguments made on the appeal in behalf of the Board of Education follow its pleadings as demonstrating reasons for its exemption from the tax. The Commonwealth's arguments on the principal questions are that the Statutes do not expressly exempt school boards from the payment of the tax; its payment is not a diversion of school funds; the Board of Education is not authorized to buy gasoline in large quantities and set up its own distributing facilities; public policy forbids such boards dealing in gasoline or engaging in commercial activities; the exemption provisions of Section 170 of the Constitution relate only to property and ad valorem taxes; and on the plea of res adjudicata that the first judgment was not final.

It seems to a majority of the court that there is involved only the question of exemption from payment of the tax by the Constitution. Neither the 1932 nor the 1936 act exempts any person or corporation, either public or private. In authorizing or requiring school boards to transport or to provide for the transportation of pupils under certain conditions to be paid out of their general funds, Section 4399-20 of the Statutes is silent on the point.

Section 170 of the Constitution exempts from taxation "public property used for public purposes; * * * institutions of purely public charity, and institutions of education not used or employed for gain by any person or corporation, and the income of which is devoted solely to the cause of education."

As is pointed out in City of Louisville v. Cromwell, 233 Ky. 828, 27 S. W. (2d) 377, the interpretation of these parts of the section is that the first exempts public property from ad valorem taxation only while the second exempts the described institution personally, that is, frees them from the payment of licenses and taxes of every class. As the gasoline tax is an excise tax, we held in that case that the City of Louisville, as a public corporation, was not exempt from its payment.

In 8 Blashfield's Cyclopedia of Automobile Law and Practice, Permanent Edition, Section 5289, it is declared upon the authority of a number of cases:

"Although the contrary view has occasionally been adopted, the great weight of authority is that in the absence of a clear exemption by the lawmaking

body, the general levy of a tax on the sale or use of motor vehicle fuel includes fuel bought or used by counties and municipal corporations, including quasi municipal corporations such as school districts. One of the reasons sometimes assigned for this rule is that the tax is levied against the distributor as distinguished from the municipality as consumer, but on the other hand it has been held that as used in the particular tax statute, the term 'distributor' or 'dealer' includes a county or municipal corporation. Moreover, with reference to counties, it has been held that a county is not a municipal corporation within a tax exemption applicable to municipal corporations.''

The same is disclosed by Annotations, 60 A. L. R. 878; 67 A. L. R. 1310; 84 A. L. R. 839, 857, 874; 111 A. L. R. 198, 205. A county board of education is a quasi municipal corporation, governed by rules applicable to strict municipalities. Section 4399-18, Kentucky Statutes; Board of Education of Newport v. Scott, 189 Ky. 225, 224 S. W. 680. In Independent School District v. Pfost, 51 Idaho 240, 4 P. (2d) 893, 84 A. L. R. 820, it was expressly held that the state may on behalf of its highways department demand an excise tax on gasoline used by a school district and that there was no implied exemption found in the statute. And it has been so held in State Tax Commission v. County Board of Education, 235 Ala. 388, 179 So. 197, and in Gulf Refining Company v. School District, 109 Pa. Super. 177, 167 A. 620. For the reasons stated in the City of Louisville case, we are of opinion that Section 170 of the Constitution does not exempt county boards of education from the payment of the gasoline tax.

Section 184 of the Constitution provides, in part that ''any sum which may be produced by taxation or otherwise for purposes of common school education, shall be appropriated to the common schools, and to no other purpose.''

It is argued that to take a part of the yield from the common school taxes to pay the gasoline tax, all of which excepting the cost of collection goes to the building and maintenance of highways of the state, violates the mandate of the Constitution. What are purposes of common school education is a matter of opinion; and, unless the

particular item of expenditure is extreme or clearly otherwise, the legislature has the right to declare it to be such a purpose. It has provided for the transportation of children to and from the schools, the cost to be paid out of general school funds, and this legislation has not been questioned as being other than legitimate. Transportation by automobile, as is contemplated, obviously requires the purchase of motor fuel, and by failing to exclude the specific excise tax from the amount paid therefor, it may be said that the legislature intended that it shall be included as a part of the cost of the transportation and therefore it should be regarded as an appropriation by the legislature of a portion of the school fund for that purpose. It is to be noted that Section 2739g-7, Statutes, relating to the free registration of cars owned by the federal and state governments and municipalities and the procurement of license plates therefor, and Section 2739j-1, which imposes a tax on the transportation of passengers by motor cars, expressly exclude school busses from their provisions. Section 1342a-1 exempts individual school children and school busses and other vehicles used exclusively in the transportation of children to and from school from the payment of bridge tolls. The exclusion in these instances suggests the purpose to include the other tax. To say the Constitution prohibits that would be to say that the tax on every other item of cost entering into the transporation of school children must be taken out, and that where school boards provide for the transportation of pupils by contract the contractor is relieved from the payment of the gasoline tax. It was held in Board of Education v. State Tax Commission, 237 Ala. 434, 187 So. 414, that the use of school funds to pay a similar tax was not prohibited by a constitutional provision that all school funds shall be "faithfully applied to maintenance of public schools."

We do not think there is any merit in the contention that the repeal by the 1936 act of the 1932 act referred to released the board of education from the payment of taxes accruing under it. Section 465, Kentucky Statutes.

The plea of res adjudicata cannot be sustained for, as disclosed in this record, the last order in the case filed by the Revenue Agent for the State-at-Large in the Kenton Circuit Court, seeking to collect a similar tax on

other gasoline, was not a final judgment since it merely sustained a demurrer to the petition and did not dismiss it.

The judgment in each case is affirmed.

Whole Court sitting.

Chief Justice Rees and Judges Thomas and Perry, dissenting.

Judge Thomas (dissenting).

I cannot agree with the majority opinion since I think the imposition of the tax is contrary to Sections 170, 184 and 186 of the Constitution, and that it disregards sound public policy and the science of government. I cannot subscribe to the proposition that without some constitutional authority the State may tax itself for itself or tax one department of government to support another department of government, both being creatures of and sustained by appropriations of the state. Certainly, if it is to be done, it ought to be by clear and specific legislation.

It is true that tax exemptions are not to be implied unless it is clearly necessary. It is not necessary to resort to implication in this case although it may well be done. The exemption of the County Board of Education from the tax exists by clear mandate of the Constitution.

Section 170 of the Constitution, quoted in the majority opinion, explicitly exempts all "institutions of education not used or employed for gain by any person or corporation, and the income of which is devoted solely to the cause of education." We have many cases holding private educational institutions exempt from the payment of taxes, but none involving state maintained or public educational institutions, doubtless because it never before occurred to any one that they or their functions were subject to taxation. Educational institutions, whether they be private or public, are put in the same class as "purely public charities," which have been many times held to be free from taxation although not exempted, either expressly or impliedly by the particular statute. Illustrations of exemptions are from the payment of a license to operate a restaurant (Corbin Y. M. C. A. v. Commonwealth, 181 Ky. 384, 205 S. W. 388, 1 A. L. R. 264) and from a sales tax on automobiles, Gray

v. Methodist Episcopal Church, South, Widows and Orphans Home in State of Kentucky, 272 Ky. 646, 114 S. W. (2d) 1141.

The writer of this dissent wrote the opinion for the court in City of Louisville v. Cromwell, 233 Ky. 828, 27 S. W. (2d) 377, holding that a city is not exempt from the payment of this gasoline excise tax or any other except on its property. That decision is still good law. It is in accord with the general authorities cited in the majority opinion holding that cities and counties are not ipso facto exempted from the payment of an excise tax on gasoline used by them. There is a clear difference between a city or county and a board of education in Kentucky. Within the charter rights of a city, and, what amounts to the same thing, powers expressly vested by the legislature in fiscal courts of counties, a city or county is independent of the operations of the state government. But from the beginning, not only in Kentucky but in all other states of this union, the establishment and maintenance of an adequate school system has been recognized as a state government function. Operating and conducting the public school system is the state itself in action. All schools are under the general control and management of the State Board of Education (Section 4377-1, Statutes) and it and the local boards are strictly controlled by acts of the legislature. Section 4399-20 et seq., Statutes. Though the funds are raised by both general taxation by the commonwealth and special taxation by local boards, their expenditure is under the control of the State Board of Education. Section 4399-40, 4399-45, Statutes. Section 183 et seq., Constitution of Kentucky. All public schools of the state, even in cities having unusual powers over their schools, are state institutions and members of boards of education are state officers. City of Louisville v. Commonwealth, 134 Ky. 488, 121 S. W. 411; Middleton v. Middleton, 239 Ky. 759, 40 S. W. (2d) 311. Title to school property is in the Commonwealth (Section 4399-19, Statutes) and is held by the board in trust for the state. City of Louisville v. Leatherman, 99 Ky. 213, 35 S. W. 625, 18 Ky. Law Rep. 124. Unlike a city or county, boards of education do not have any money that can be applied to general purposes. It must all be used for school purposes and the board can incur no expense and make no expenditure except as authorized by the stat-

ute; and Section 4370-3 of the Statutes prohibits the use of any part of the common school fund or revenue for any purpose other than the payment of teachers except as may be expressly provided in the School Code of 1934. Another important difference between a city as a municipal corporation and a local board of education as a quasi municipal corporation is that the legislature, except as limited by general statutes, has no control over the expenditure of a city's funds, their disposition or expenditure being entirely within the discretion of its local legislative body, while the school funds are under the control of the state legislature exclusively. Therefore, even though we should ignore the different classification made by Section 170 of the Constitution, there remains the fact that the schools are state institutions and not strictly municipal corporations. Never before so far as my knowledge goes has it ever been contended by one department of the state government that other state institutions are liable for the payment of a tax to support it, and they and their officers are to be penalized for not paying up promptly.

All of the foreign authorities and the text books cited in the majority opinion relate to the liability of *cities* and *counties* for such tax except in Idaho, Alabama and Pennsylvania cases. They are clearly distinguishable because of different constitutional and statutory provisions in those jurisdictions. The Idaho case (Independent School District v. Pfost [51 Idaho 240, 4 P. (2d) 895]) merely declares that the legislature could impose a license tax on any individual or corporation "other than municipal." Said the court: "The constitutional inhibition of a license tax against municipal corporations is against a tax of that nature, not against an excise or some other tax not in fact a license tax."

Referring to many cases, including Shanks v. Kentucky Oil Company, 225 Ky. 303, 8 S. W. (2d) 383, as defining a gasoline tax of this character to be an excise tax, the Idaho court held that the provision of the constitution quoted did not prohibit its imposition upon the fuel used by the school board. The Pennsylvania case (Gulf Refining Company v. School District, supra) is not in point. The statute provided the tax should be payable upon gasoline "sold and delivered to or used by the Commonwealth, and *every political subdivision* thereof." Act May 21, 1931, P. L. 149, Section 4, 72 P.

S. Pa. Section 2611d. The question considered was only whether a school district was a political subdivision, and the court held it was under the definition theretofore made; and in any event the tax was clearly payable by the commonwealth, the schools being regarded as state institutions. No constitutional question was involved or considered. The Alabama case (State Tax Commission v. County Board of Education, supra) considered a statute which specifically provided that a "person" liable for tax on the storage and withdrawal of gasoline for use in motor cars should mean and include "counties, municipal corporations, school boards, or agencies of the State." Gen. Acts Ala. 1935, Section 348, schedule 156, p. 508. It was, therefore, of course, held that a board of education was liable for the tax. The statute in its application to school boards was held constitutional under an amendment to the Constitution which expressly provided for the gasoline excise tax without any exception or exemption. Being an excise tax its imposition was not contrary to another constitutional provision exempting "property, real or personal," of the state, counties and other municipal corporations. Board of Education v. State Tax Commission, 237 Ala. 434, 187 So. 414, 416. The decisions were re-affirmed in County Board of Education v. State, 239 Ala. 276, 194 So. 881, which held that the board of education was liable for the statutory penalty for not paying the tax but was not liable for interest on that penalty.

There was no need for an express exemption of public educational institutions to be placed in our gasoline tax statute. The Constitution put it there as it does in many other taxing statutes, e. g., Section 1882, empowering fiscal courts to levy taxes for county purposes. The majority opinion refers to statutory exemption of boards of education from the payment of fees for registering motor cars, of tolls over bridges, and of the tax of $2 per seat for automobiles used in hauling passengers for hire. I do not construe these express exemptions as indicating an intention to impose the gasoline excise tax on school boards. On the contrary, these exemptions show an intention *not* to tax schools. Likewise, is Section 4281j-2 which exempts educational institutions, the United States, the State, the municipalities and other political subdivisions from payment of the excise tax on electricity, water, gas and telephone and telegraph mes-

sages. In State Highway Commission v. County Board of Education, 264 Ky. 95, 94 S. W. (2d) 302, 305, we held the maxim, "expressio unius est exclusio alterius," not applicable where the act providing for the building or purchase of bridges to be paid for by the tolls exempted certain classes of travelers and the question is whether school children and school busses were exempt. The court held that they could travel free of bridge tolls because of the long established public policy contained in statutes providing for free passage over toll highways, even though this right was not given by the act. If these exceptions are not sustained under the exemption provisions of the Constitution, they are unconstitutional classifications and special legislation. If they are under the exemption provisions, so also is the gasoline excise tax.

As has been stated, Section 4370-3 of the Statutes restricts the expenditure of school funds provided by the state to certain administrative costs and teachers' salaries, and to say that the gasoline tax statute includes school boards is to hold that this section of the statute and some others are in part impliedly repealed or amended.

A board of education does not fit into the definition of a person or receiver, dealer or refiner of gasoline, who is made responsible for the tax and who must obtain a license from the Department of Revenue before withdrawing, receiving or importing gasoline. The tax is passed on to the individual consumer. I do not conceive that a school board buying gasoline in wholesale quantities can be classed as a refiner or dealer; yet that is the construction given the statute by the majority opinion. If a board of education wants to save money by buying its gasoline in wholesale quantities, under the opinion it must first secure a permit from the Department of Revenue of the State, execute a bond and make reports in accordance with the statute or become liable for penalties equal to 40% of the tax as the court has held in this case. The board has become subject to criminal prosecution for embezzlement of state funds and is liable to a fine of $1,000 for each purchase and its agents and officers have become subject both to fine and imprisonment. Section 4281g-11, 4281g-12, 4281g-16, 4281g-20. If the Revenue Department has power to withhold or cancel a license to buy gasoline at wholesale, it then has

power to interfere with the discretion vested in the boards of education.

The terms of the act are such as to show that boards of education were not intended to be included. The statute throughout refers to liability and duties of a "person," which is defined in Section 4281g-1 to "mean and include any individual or individuals, association, firm, co-partnership, corporation, receiver, trustee, conservator, or other officer appointed by any State or Federal court." In the year 1863, a general taxing statute provided that all property should be assessed for taxation and the tax paid by the "owner or possessor thereof." It excepted property used for religious and educational purposes and that owned by the United States. All the property of the City of Louisville was assessed for taxation for state and county purposes under that statute. Judge Robertson, writing in City of Louisville v. Commonwealth, 1 Duv. 295, 62 Ky. 295, 85 Am. Dec. 624, pointed out that general law concerning persons may include corporations and that each state and county is a quasi corporation and each is in law a person; that without qualification or exception taxation of property of all persons would include municipal as well as private corporations. Drawing a distinction between a private and a public corporation, he wrote:

"But a municipal corporation, like a State, a county, or the city of Louisville, is much more than a person. While nominally a person, it is vitally a political power; and each, in its prescribed sphere, is 'imperium in imperio.' All are constituent elements of one total sovereignty. The city of Louisville, to the extent of the jurisdiction delegated to it by its charter, is but an effluence from the sovereignty of Kentucky, governs for Kentucky, and its authorized legislation and local administration of law are legislation and administration by Kentucky through the agency of that municipality. The tax law of Kentucky constructively applies to persons only, and not at all to political bodies exercising in different degrees the sovereignty of the State. Were this not true, then—the statute literally embracing all persons, and the State being, in one sense, a person—her capital and penitentiary and other public property would, like the estate of a natural person, be subject to assessment for taxation; and so, too, would the court-houses and jails and poor-houses of all the counties in

the State. But neither the State nor a county has ever been considered a person contemplated by any tax law ever enacted. And does not the only reason for their constructive exclusion equally exempt the municipal property of Louisville, used for the convenience and facility of its local government? We think so, and, without elaborate argument, we so adjudge.''

It was held that the specification of certain exceptions did not imply that the legislature intended that municipal property used for purposes of local government should be subjected to taxation, and that ''to assume the converse would involve the absurdity of taxing the public property of the State and the counties.''

The court did not think the legislature was guilty ''of the folly of expressly exempting that which no rational construction could have made subject to the tax law.'' It was, therefore, held that the city's property necessary or useful to the administration of the municipal government and devoted to that use was exempt from state taxation, even though the statute did not so provide.

The Supreme Court has recently held the government not to be a ''person'' entitled to maintain an action for damages within the meaning of the Anti-trust Act providing that ''any person'' injured by reason of anything forbidden by the Act may sue therefor and recover threefold damages sustained by him. U. S. v. Cooper Corporation, ... U. S. ..., 85 L. Ed. 607.

Moreover, it is a general rule of statutory construction that no act of the legislature is to be construed to be in derogation of sovereignty unless the intention of the legislature to effect that purpose is clearly expressed. 59 C. J. 1121. And as said in 59 C. J. 1103: ''The state and its agencies are not to be considered as within the purview of a statute, however general and comprehensive the language of such act may be, unless an intention to include them is clearly manifest, as where they are expressly named therein, or included by necessary implication.''

Under that rule, this court has held that Section 1820 of the Statutes which provides against another ferry being operated within one mile of an existing ferry is not operative or binding upon the state, which

could, through its highway department, establish a free ferry right up against one operating under a franchise from a county court. State Highway Commission v. Smith, 250 Ky. 269, 62 S. W. (2d) 1044. Also, that the state is not within the purview of a statute authorizing clerks to collect $5 on each action commenced in the circuit courts. Commonwealth v. Allen, 235 Ky. 728, 32 S. W. (2d) 42.

What has been said becomes more certainly sound when we consider Section 184 of the Constitution which provides that money raised for school purposes shall be irrevocably dedicated to those purposes and without diversion to any other. It provides, ''any sum which may be produced by taxation or otherwise for purposes of common school education, shall be appropriated to the common schools, and to no other purpose.''

Section 4370-3, Statutes, to which I have referred, is in full accord with that constitutional provision, and prohibits the expenditure of school funds for anything other than specified by the School Code of which it is a part. This court has consistently guarded the school funds from any diversion. Thus, in City of Louisville v. Leatherman, supra, the court laid down the rule that the appropriation of any part of the school fund—either to the payment of general taxes for the support of the state government or to the payment of special assessments for street improvements—is an appropriation thereof to other than common school purposes and is, therefore, forbidden by Section 184 of the Constitution. This was pointed out in Wilson v. Board of Education, 226 Ky. 476, 11 S. W. (2d) 143, holding unconstitutional a statute which undertook to authorize school districts to pay their proportionate part of public improvements in front of their property. If there is any difference between paying for a street adjacent to the school house and paying to build highways throughout the state (and likewise adjacent) it is in favor of the street assessment.

The opinion permits and adjudges the diversion of school funds not only for a state tax but for the payment of a penalty of 20% thereon because it was not paid when it was supposed to be due, plus another penalty of 20% because the Finance Commissioner and Revenue Department sued to recover it although the Board had previously filed a suit testing the question and asking

injunctive relief. For good measure 6% interest upon the whole was added. The old dictum that "The power to tax is the power to destroy" is applicable here, for if the Revenue Department should perform its full duty and impose all the civil and criminal penalties provided for in the statute against the county board of education, then there would be little left for school purposes.

I do not agree that there was an implied appropriation of part of the school fund to the payment of the tax because the legislature authorized the transportation of the children. If such an appropriation can be implied and such liability imposed by implication and interpretation, then we may wonder how many other departments of the state will rise up and demand a slice of the school fund that they may have more money to spend for their respective objects.

There remains to be considered Section 186 of the Constitution which provides: "Each county in the Commonwealth shall be entitled to its proportion of the school fund on its census of pupil children for each school year."

It is conceded to be true by the demurrer that hauling children to school by the Kenton County Board is so great that it will take $1 per year per pupil to pay the gasoline tax. The per capita appropriation and distribution by the state to the local school revenues for the years 1936 and 1937 was only $11.66. Thus there is retained by the state for the purpose of building highways almost 10% of the sum allotted to the Kenton County Board of Education as its constitutional share of the state school revenues. As elaborately emphasized in Talbott v. Kentucky State Board of Education, 244 Ky. 826, 52 S. W. (2d) 727, the distribution of these revenues must be equal and uniform, and an act undertaking to provide otherwise to aid the poorer counties was unconstitutional. It is conceded to be true in this case that the result of having to pay these taxes back to the state will reduce the terms of common schools of the county from 9 to 8 months.

It has been suggested that to exempt school boards from the tax may result in the evasion of payment on gasoline used privately. Of course, that is an administrative and legislative matter and not a judicial one. However, machinery does exist for exempting the

United States government and here it may be observed that there is no such exemption stated in the statute. Express exemption is not necessary, for a statute imposing such an excise tax and containing no specific provision for exemption could not be enforced as to a sale to the United States government. Panhandle Oil Company v. State of Mississippi, 277 U. S. 218, 48 S. Ct. 451, 72 L. Ed. 857, 56 A. L. R. 583.

The identical gasoline held to be taxable in this case was exempted by the federal government of the payment of the 1 cent per gallon imposed by the federal statute. 26 U. S. C. A. Int. Rev. Code, Sections 3412, 3442, and it was so reported to the proper governmental agency. Moreover, Section 4281h-1, Statutes, which was enacted at the same Extraordinary Session of the legislature that enacted the gasoline tax under consideration, relieved from such a tax fuel used in motor vehicles other than those described in 4281g-1, etc., and set up machinery for the granting of exemption permits to users of gasoline in such instrumentalities. Therefore, it does not appear that there is any insuperable barrier to the granting of the exemption and the protection of the legitimate revenues.

Finally, it should not be overlooked that excepting teachers' salaries most of the other school expenses are "fixed charges" and not subject to material deduction; hence the payment of taxes to build and maintain highways must result in reducing teachers' salaries or, alternatively in reducing the length of the school term.

The kernel of this dissent may be stated in this sentence: There is no statute authorizing the exaction of the tax from the school board; but were it otherwise such a statute would invade the various sections of the Constitution referred to.

I, therefore, respectfully dissent from the majority opinion; and am authorized to say that Chief Justice Rees and Judge Perry concur.