CHILDREN'S PSYCHIATRIC HOSPITAL OF NORTHERN KENTUCKY, INC.; Hardin Memorial Hospital; Highlands Regional Medical Center; Hospital Corporation of Kentucky d/b/a Scott General Hospital; Lourdes Hospital, Inc.; Marcum & Wallace Memorial Hospital; Mary Chiles Hospital, Inc.; Memorial Hospital, Inc.; Mercy Hospital of Owensboro, Kentucky, Inc.; Johnson Math-

ers Health Care, Inc. d/b/a Nicholas County Hospital; Our Lady of the Way Hospital, Inc.; Owensboro–Daviess County Hospital; Rivendell Psychiatric Hospital of Kentucky, Inc.; St. Luke Hospital, Inc.; Springview Hospital, Inc.; Taylor County Hospital District Health Facilities Corporation; The Adair County Public Hospital District Corporation; Kentucky Hospital Association, Inc., Appellants.

v.

REVENUE CABINET, COMMONWEALTH OF KENTUCKY; Margaret Handmaker, In Her Capacity As Secretary; Cabinet for Health Services, Commonwealth of Kentucky; John H. Morse, In His Capacity As Secretary, Appellees.

No. 96–SC–1123–TG.

Supreme Court of Kentucky.

April 22, 1999.

Edgar A. Zingman, Stephen R. Price, Wyatt, Tarrant & Combs, Louisville, for Appellants.

Douglas M. Dowell, Cathy Cravens Snell, Frankfort, Leonard G. Rowekamp, Covington, for Appellees.

Opinion of the Court by Special Justice RAYMOND OVERSTREET.

Seventeen (17) Hospital Corporations and the Kentucky Hospital Association, representing approximately 120 hospitals in Kentucky, challenge the constitutionality of the 2–½% hospital tax that was enacted by the General Assembly. The Appellants are challenging HB 1 and HB 250 as enacted by the General Assembly and have raised the following grounds as their reason for challenging HB 1 and HB 250: First, the Appellants challenge the constitutionality of the provider tax in stating that it violates Section 170 of the Kentucky Constitution. Secondly, the Appellants challenge HB 1 and HB 250 as constituting special legislation in violation of Section 59 of the Constitution. Thirdly, the Appellants say that HB 250, in particular, violates the equal protection and due process provisions of the State and Federal Constitu-

tion. Fourthly, the Appellants challenge HB 250 as being misleading in name and in violation of Section 51 of the Kentucky Constitution. The Franklin Circuit Court granted Summary Judgment for and on behalf of the Appellees and the Appellants appealed to the Court of Appeals. This Court granted appellant's motion to transfer to consider the constitutional issues raised herein.

In 1993, the General Assembly, in reaction to a public outcry for health care reform, enacted HB 1. HB 1 was codified at KRS 142. It was later repealed. The constitutionality of HB 1 was challenged in an action styled *Commonwealth of Kentucky Revenue Cabinet v. Smith*, Ky., 875 S.W.2d 873, *cert. denied sub nom Yeoman v. Kentucky*, 513 U.S. 1000, 115 S.Ct. 509, 130 L.Ed.2d 417 (1994).

In the regular session of 1994, the General Assembly enacted HB 250, which also is the subject of this appeal. HB 250 went through a rocky road, both in the Kentucky House and the Kentucky Senate, before it was adopted formally. Various amendments were added to HB 250 ending up with the House and Senate unable to agree on all the amendments and the original version of HB 250. The General Assembly then pursuant to their rules, appointed a Conference Committee, which was unable to concur on a compromise bill. The General Assembly leadership, pursuant to their authority, then adopted a free Conference Committee, which then was adopted in the Senate and also the House, and constituted the version of HB 250 which currently is being challenged.

### DOES THE HOSPITAL PROVIDER TAX VIOLATE

### SECTION 170 OF THE KENTUCKY CONSTITUTION?

■ The Appellants are asserting that the hospital provider tax, as outlined in HB 250, is in violation of Section 170 of the Kentucky Constitution. Section 170 originally provided in pertinent part the following:

"There shall be exempt from taxation public property used for public purposes, places actually used for religious worship with the grounds attached thereto and used and appurtenant to the house of worship, not exceeding one-half acre in cities or towns, and not exceeding two acres in the country; places of burial not held for private or corporate profit, institutions of purely public charity, and institutions of education . . . ."

■ When interpreting the Constitution, the words employed therein should be given the meaning and significance that they possessed at the time they were employed. In looking at the adoption of Section 170 of our Constitution and realizing that as you go through the various Sections relating to taxation, Section 170 and related parts thereto is clearly designated to mean real property and not a carte blanche exemption of taxation. If the Franklin Circuit Court made a factual determination of whether the hospitals in question are institutions of purely public charity, this Court is unable to locate such determination and the record is silent on this particular point. There is no concessions made by the Commonwealth on this particular point. Therefore, this Court is left to make that determination without benefit of prior decisions.

■ The Appellants would argue that the legislature has no authority to define certain exemptions. We disagree. The legislature has many times in the past defined what exemptions would be allowed in many different categories. Because the provider tax in question is not a property tax, it is not subject to the structure of the language of Section 170. *Reynolds Metal Co. v. Martin*, 269 Ky. 378, 107 S.W.2d 251, 255, *appeal dismissed* 302 U.S. 646, 58 S.Ct. 146, 82 L.Ed. 502 (1937).

We rhetorically ask the question, "Could this be a compelling reason to extend the interpretation of Section 170 of the Constitution?" When faced with incidental decisions from the past, this Court must follow the decisions that resonate the sounder of reasoning. Historically, Courts, when construing constitutional provisions, will look to the history of the times to ascertain the intent of the founding fathers. Clearly, Section 170 only exempts property tax according to the constitutional debates. With this in mind,

let's delve back to 1890 when the constitutional convention was debating the provisions of Section 170. The Constitution of 1891 was adopted after vigorous and sometimes rancorous debates. The debates, some of which are contained in 2 *Debates, Constitutional Convention*, (1890), as it relates to revenue and taxation, clearly refer to ad valorem taxation. As a matter of fact, Convention Delegate Swago explicitly stated that the debate was about the taxation of property when he made the following comments:

> The mode of taxation proposed in the report, and not controverted by any, is that the aggregate property of the State should be the means from which the tax should be collected; and the amount in the hands of each individual should be the measure by which the amount he is called upon to contribute should be measured.

*Debates* at 2539.

Delegate Mackoy further, by his comments, indicates that the debate was centered on and perhaps limited to ad valorem real property taxes, when he said:

> Every particle of property, real or personal, owned by any individual or a corporation, should be subjected to its burden, in order that the individual may be compelled to contribute for the protection which he receives as a member of society.

*Debates* at 2427.

Following the constitutional debate's pointed discussion of Section 170 and then looking at the first Kentucky Statutes that were published after the adoption of the 1891 Constitution, *The Kentucky Statutes*, Barbour and Carroll, 1894, we find it interesting to note that they reported the title for Section 170 as "Property exempt—cities may exempt manufactories." This following immediately upon the adoption of the 1891 Constitution is strong evidence that Section 170 applies only to ad valorem taxes.

■ This Court cannot ignore that the Appellants have raised an interesting question of this Court's interpretation regarding Section 170 in the case of *Corbin YMCA v. Commonwealth*, 181 Ky. 384, 205 S.W. 388 (1918). In *Corbin*, the question was on an occupational tax, and it was undisputed that the occupational tax in question was not an ad valorem or property tax, but was a revenue raising measure. In reviewing *Corbin*, this Court noted that other Section 170 exemptions for public purposes, religious worship, or for cemeteries applied only to designated "property," and that the Section 170 charitable exemption was to "institutions" themselves. We believe that the *Corbin* decision was an aberration, and hence, is not applicable as it relates to the hospital provider tax. We would go one step further to say that traditionally, and this Court still believes, that exemptions from taxation have been in the past and are now disfavored in law and cannot be presumed or implied. That further, they must be strictly construed and any and all doubts resolved against their application.

For the Kentucky General Assembly to define classes that coexist with the federal law is prudent; it is sound; and it is a viable rationale of public policy. In the creation of the 2-½% tax on hospitals, the General Assembly was looking at the overall health picture and health delivery systems in Kentucky. For this Court now to question whether or not that the General Assembly, in their wisdom, may define particular classes for exemptions or non-exemptions and to say that the General Assembly erred in carrying out their responsibilities would be an irresponsible act for this Court.

## DOES HB 1 AND HB 250 CONSTITUTE SPECIAL LEGISLATION

### IN VIOLATION OF SECTION 59 OF THE KENTUCKY CONSTITUTION?

■ The Appellants complain that HB 250 as enacted extended the provider taxes that is only on hospitals, prescription drugs, and a few other health care services, thereby emasculating this Court's decision in *Commonwealth Revenue Cabinet v. Smith*, Ky., 875 S.W.2d 873 (1994). This Court determined in *Smith* that a provider tax could be imposed on physicians because provider taxes had been imposed upon a natural class consisting of the health care industry as a whole and as circumscribed by federal law. We affirm the language in *Smith* because HB 250 complied

with federal guidelines because they are broad-based, uniform, and do not hold the taxpayer harmless for the tax. *Commonwealth Revenue Cabinet vs. Smith*, Ky., 875 S.W.2d 873 (1994). Doctors are a part, and we emphasize a vital part, of the health care industry in Kentucky. To allow doctors, as providers, to be taxed and not the hospitals is unrealistic and is not good public policy and to do otherwise would be misconstruing the federal law. 42 U.S.C. Section 1396(1)(A); 42 C .F.R. 43356. We believe the Court in the *Smith* case clearly made the right decision and refer herein to Smith as a rational basis for stating that HB 1 and HB 250 do not violate Section 59 of the Kentucky Constitution. Since HB 250 is substantially the same as HB 1, we believe that *Smith* controls and that HB 250 is constitutional.

## DOES HB 250 VIOLATE THE EQUAL PROTECTION AND DUE

## PROCESS PROVISIONS OF THE STATE AND FEDERAL CONSTITUTIONS?

■ Under both state and federal law, the Kentucky General Assembly, when enacting a statute, may create classifications. *Madden v. Kentucky*, 309 U.S. 83, 60 S.Ct. 406, 84 L.Ed. 590 (1940). The same standards apply in creating classifications under the Kentucky Constitution are the same as those under the Fourteenth Amendment to the United States Constitution. *Reynolds Metal Co., supra; Delta Air Lines, Inc. [v. Commonwealth Revenue Cabinet*, Ky., 689 S.W.2d 14 (1985)]; *Smith, supra*. In looking at the equal protection standard that we find applicable here, "a statute will be sustained if the legislature could have reasonably concluded that the challenged classification would promote a legitimate state purpose." *Exxon Corp. v. Eagerton*, 462 U.S. 176, 196, 103 S.Ct. 2296, 76 L.Ed.2d 497 (1983). See also *New Orleans v. Dukes*, 427 U.S. 297, 96 S.Ct. 2513, 49 L.Ed.2d 511 (1976). These cases have adopted and the common thread running throughout them is that a state may impose different specific taxes upon different trades and professions and may vary the rate of excise upon the various products. If the selection or classification is neither capricious nor arbitrary, and rests upon some reasonable considerations of difference or policy, there is no denial of the equal protection of the law. In looking at the equal protection clause, the exacting equality is not as rigid in the field of taxation as it is in many other areas of the law. *Revenue Cabinet v. Estate of Marshall*, Ky.App., 746 S.W.2d 408, 411 (1988). In looking at these cases, one can recognize that the rational basis standard is easily satisfied in challenges to taxing statutes. In reviewing 42 U.S.C. § 1396b and *Smith*, this Court finds that health care related taxes should be uniformly imposed only within the classes enumerated. Thus, federal law does not require uniform treatment between hospital services and physician services, but federal law does require uniform treatment of all hospitals providing inpatient hospital services.

In *Hayes v. State Property and Buildings Commission*, Ky., 731 S.W.2d 797 (1987), the Court wrote:

> The Constitution is to protect the people from their government and not to deprive them of legitimate activities of government intended to provide public benefit and public service. The definition of public purpose when made by the legislature should be upheld by the Court as long as it has some reasonable basis. *Hayes* at 802.

We believe the public purpose behind HB 1 and HB 250 is obvious. It is to provide medical care for the indigent, and the General Assembly based on their classifications in 42 U.S.C. § 1396b. Thus, the classification, which we believe to be grounded in public interest, is not arbitrary, unreasonable, or in violation of the State Constitution.

HB 250 does not constitute special legislation that is unconstitutional under Section 59 of the Kentucky State Constitution, because the health delivery system in Kentucky is in tandem with federal guidelines. Directly, it is connected to doctors, and there is no distinguishing factor between the individual who delivers health care and the establishment that provides the health care to Kentuckians.

## WAS HB 250 MISLEADING AS NAMED IN VIOLATION OF SECTION 51 OF THE STATE CONSTITUTION?

■ The title of HB 250, "An Act relating to health care reform and providing funding

therefor," in and of itself suggests to any and all interested parties that it is a fair and reasonable notice of the bill's content, including the extension of the provider tax. We believe that the title follows the opinion in *Anderson v. Wayne County*, 310 Ky. 597, 221 S.W.2d 429 (1949), in that the title must be a fair and reasonable notice of the provisions of the act. This issue also was addressed in *Smith* when the Court said:

> Violation of Section 51 of the Kentucky Constitution was raised in that "no law enacted by the General Assembly shall relate to more than one subject, and that shall be expressed in the title . . ." Construction of this section has found a liberal course with all doubts as to compliance resolved in favor of the validity of the legislation action. *Commonwealth ex rel. Armstrong v. Collins*, Ky., 709 S.W.2d 437 (1986). Continuing, if the title furnishes a "clue" to the act's contents, it may pass constitutional muster. See *Talbott, Auditor of Public Accounts v. Laffoon*, 257 Ky. 773, 79 S.W.2d 244 (1934).

The Court further found a title sufficient to put the General Assembly and all interested parties on notice in *Lamar v. Board of Education of Hancock County School District*, Ky., 467 S.W.2d 143 at 145–46 (1971). In this particular case, it was an "Act relating to education, and the financing thereof," and it too was challenged under the provisions of § 51 of the Constitution. That act consisted of five parts, including the classification and compensation of teachers, three optional school taxes and the establishment of a commission to help education. The Court found this title sufficient to pass the constitutional muster. The tax imposed by HB 250 and its various provisions contained therein are not dissimilar to the subject expressed in the title of HB 250. Any individual capable of reading the English language and understanding the meaning thereof would have a clue as to what the contents of HB 250 were by its title. Therefore, we have concluded that the title and subject matter included in HB 250 do not violate Section 51 of the Kentucky Constitution.

## CONCLUSION

For the reasons stated above, HB 1 and HB 250 are held to be constitutionally valid and the Judgment of the Franklin Circuit Court is hereby affirmed.

JOHNSTONE, STEPHENS and STUMBO, JJ., and Special Justice PAUL H. TWEHUES, Jr., concur.

COOPER, J., concurs in part and dissents in part in a separate opinion in which GRAVES, J., joins.

LAMBERT, C.J., and WINTERSHEIMER, J., not sitting.

COOPER, Justice, concurring in part and dissenting in part.

I concur with the majority opinion insofar as it holds that the Revenue Cabinet can collect the 2 1/2% hospital provider tax from hospitals which are not "institutions of purely public charity" as that phrase is used in Section 170 of the Constitution of Kentucky. However, I dissent insofar as the majority opinion holds that the tax can be collected from hospitals which are institutions of purely public charity.

Our present constitution was ratified in 1891. As initially adopted, Section 170 read as follows:

> There shall be exempt from taxation public property used for public purposes; places actually used for religious worship, with the grounds attached thereto and used and appurtenant to the house of worship, not exceeding one-half acre in cities or towns, and not exceeding two acres in the country; places of burial not held for private or corporate profit, *institutions of purely public charity*, and *institutions of education* not used or employed for gain by any person or corporation, and the income of which is devoted solely to the cause of education; public libraries, their endowments and the income of such property as is used exclusively for their maintenance; all parsonages or residences owned by any religious society, and occupied as a home, and for no other purpose, by the minister of any religion, with not exceeding one-half acre of ground in towns

and cities and two acres of ground in the country appurtenant thereto; household goods and other personal property of a person with a family, not exceeding two hundred and fifty dollars in value; crops grown in the year in which the assessment is made, and in the hands of the producer; and all laws exempting or commuting property from taxation other than the property above mentioned shall be void. The General Assembly may authorize any incorporated city or town to exempt manufacturing establishments from municipal taxation, for a period not exceeding five years, as an inducement to their location. (Emphasis added.)

The majority holds in this case that the exemption for institutions of purely public charity applies only to ad valorem taxes. This interpretation ignores the history of Section 170 as well as all of our previous cases interpreting the language in question.

The majority cites two excerpts from the 1890 constitutional debates as proof that Section 170 was intended to apply only to ad valorem taxes. However, the quoted portion of delegate Mackoy's speech was clearly intended only as a recitation of a general principle. Delegate Mackoy was arguing against the inclusion of any constitutionally sanctioned exemptions. 2 *Proceedings and Debates of the Constitutional Convention of 1890* 2427–31. The quoted portion of delegate Swango's speech was obviously referring to what became Section 171, the general provision authorizing the levy of state taxes; for the crux of his address was an argument against any expansion of exemptions with respect to property owned by religious societies. *Id.* at 2538–41. While quoting these speeches out of context, the majority ignores the fact that delegate Caldwell offered an amendment which would have deleted the language "institutions of purely public charity" from Section 170 and substituted therefor the language "the property of institutions actually used exclusively for charitable purposes." The proposed amendment was defeated. *Id.* at 2559.

Within five years of the adoption of the 1891 Constitution, our predecessor court was called upon to interpret the meaning of the term "institutions" as used in Section 170. In *Trustees of Kentucky Female Orphan School v. City of Louisville*, 100 Ky. 470, 36 S.W. 921 (1896), the taxing authority claimed that only that portion of the school's property actually used for charitable or educational purposes fell within the exemption, and sought to tax a building owned by the school, but leased for the purpose of generating revenue to operate the school. It was held that the exemption applied to income-producing property when the income was used for the charitable purpose for which the institution was organized.

> [U]pon the whole it would seem that, when the statute [1] exempts the "institution" from taxation, and no qualifying words are used showing or tending to show that only the property "used" by the institution, or "connected" with the institution, is to be exempt, then the associated entity—the corporate being—with its estate as an entirety, is embraced by the word "institution."

*Id.*, 36 S.W. at 925.

In *Commonwealth v. Young Men's Christian Ass'n*, 116 Ky. 711, 76 S.W. 522 (1903), the Court reaffirmed that the above-quoted paragraph in the *Female Orphan School* case correctly defined the term "institution" as used in Section 170. It then held that "[a]s the institutions are ones of purely public charity . . . all their property is exempt from taxation." *Id.*, 76 S.W. at 524.

In *Commonwealth v. Gray's Trustee*, 115 Ky. 665, 74 S.W. 702 (1903), the taxing authority sought to levy a tax on a trust fund created solely for educational purposes. The issue was whether the trust fund was an "institution of education" and thus exempt under Section 170. In holding the fund exempt, the Court stated that "when money or other property is set apart, the exclusive use and income of which is to be applied to the cause of education or pedagogy, the property

---

1. The Court was discussing interpretations of statutes of other states containing language identical to that contained in Section 170.

impressed with that character becomes an institution, without regard to the particular form of the investment ." *Id.* And in *Commonwealth v. Board of Education of Methodist Episcopal Church,* 166 Ky. 610, 179 S.W. 596, 597 (1915), it was held that the phrases "institutions of purely public charity" and "institutions of education" used in Section 170 embrace not only the buildings actually used in administering charity or education, but all of the property of such institutions wherever situated.

It was in the context of these existing precedents that our predecessor court in *Corbin Young Men's Christian Ass'n v. Commonwealth,* 181 Ky. 384, 205 S.W. 388 (1918) first addressed whether Section 170 exempted an institution of purely public charity from payment of taxes other than ad valorem taxes. The taxing authority in that case sought to levy an occupational license tax on the YMCA's operation of a restaurant on its property. In holding that the tax could not be levied, the Court first reiterated the now-familiar quote from *Female Orphan School, supra,* then held:

> [A]n institution of purely public charity ... is by our Constitution exempt, not only from the payment of ad valorem or property taxes, but also from the operation of any and every revenue-producing measure upon such of its activities as are confined to, and not inconsistent with, the charitable purposes for which it was organized....

*Corbin YMCA, supra,* 205 S.W. at 390.

The majority opinion dismisses *Corbin YMCA* as an "aberration" which should be ignored in deciding whether the Revenue Cabinet can impose the hospital provider tax on the incomes of institutions of purely public charity in this case. However, the principle announced in *Corbin YMCA* has been consistently reaffirmed in a number of later cases.

In *City of Louisville v. Cromwell,* 233 Ky. 828, 27 S.W.2d 377 (1930), *Corbin YMCA* was cited as authority for the proposition that Section 170 differentiates institutions of purely public charity and institutions of education from other entities enumerated in that Section, and that with respect to those other entities, the exemption applies only to taxes on real property. *Id.,* 27 S.W.2d at 379–80.

In *Gray v. Methodist Episcopal Church, etc.,* 272 Ky. 646, 114 S.W.2d 1141 (1938), the church objected to paying both a license fee charged for the registration of its motor vehicle and a use tax levied on the value of that vehicle. The Court specifically reaffirmed *Corbin YMCA* and *Female Orphan School* and held that with respect to an institution of purely public charity, it is *the institution* and not *the property of the institution* that is exempt from taxation. It then concluded that the vehicle registration fee was not a tax, but a valid exercise of police regulatory power. However, the use tax was found to be a purely revenue-raising measure. Thus, the church was required to pay the vehicle registration fee, but not the use tax.

In *Board of Education of Kenton County v. Talbott,* 286 Ky. 543, 151 S.W.2d 42 (1941), it was noted that Section 170 exempts public property only from ad valorem taxation, whereas institutions of purely public charity and institutions of education are exempted personally, *i.e.,* Section 170 "frees them from the payment of licenses and taxes of every class." *Id.,* 151 S.W.2d at 45.

In *City of Louisville v. Presbyterian Orphans Home Soc. of Louisville,* 299 Ky. 566, 186 S.W.2d 194 (1945), it was again noted that Section 170 grants a broader exemption to institutions of purely public charity and institutions of education than it does to other entities, *e.g.,* religious societies.

> If the framers of the Constitution intended to alter the liberal policy long favored in this state [exempting charitable and educational institutions] by exempting only a portion of the property of such institutions, they surely would have said so in plain and unmistakable language. It is significant that when they dealt with religious societies they were specific and limited the exemptions....

*Id.,* 186 S.W.2d at 199.

*See also Department of Revenue v. Louisville Children's Theater, Inc.,* Ky.App., 565 S.W.2d 643, 647 (1978) (exempt from sales taxation); *Department of Revenue v. Central Medical Laboratory, Inc.,* Ky.App., 555 S.W.2d 632, 634 (1977) (exempt from sales and use taxes). Interestingly, in the latter

case, Central Medical Laboratory, Inc., was held to be an institution of purely public charity because it was a non-profit corporation organized for the purpose of establishing a laboratory testing facility for three non-profit hospitals.

Since 1955, the citizens of this Commonwealth have ratified six amendments of Section 170. Three of those amendments added or refined a homestead exemption for persons sixty-five years of age or older or disabled. Another amended the exemption for household goods. Yet another amended the exemptions for property owned by religious societies. Most recently, a 1998 amendment authorized the legislature to enact statutes exempting personal property from property taxes. None of these amendments purported to affect the exemption for institutions of purely public charity. "The general rule is, when an amendment is made to a provision in a constitution to which a certain construction has been given, it will be presumed its unchanged portions have the same meaning formerly given it by legislative or judicial construction." *Hodgkin v. Kentucky Chamber of Commerce*, Ky., 246 S.W.2d 1014, 1016–17 (1952). Application of this principle to the history of Section 170 mandates a conclusion that not only is *Corbin YMCA* not an "aberration," its interpretation of the exemption for institutions of purely public charity has attained constitutional stature. If there is an "aberration" in our interpretation of Section 170, it is the majority opinion in this case; for this is the first case ever to interpret Section 170 as not exempting institutions of purely public charity from a revenue-raising tax.

I conclude that the hospital provider tax is unconstitutional as applied to any hospital which is an institution of purely public charity. However, because the trial court never reached this issue, the record contains no findings of fact or conclusions of law as to whether any or all of the appellants in this case fall within that classification. Thus, I would remand this action to the Franklin Circuit Court with directions to receive evidence and make findings and conclusions regarding the charitable status of each hospital appellant, and to prohibit the Revenue Cabinet from collecting the hospital provider tax from any of them which are "institutions of purely public charity."

GRAVES, J., joins this opinion, concurring in part and dissenting in part.